BARKER et al. v. WILSON, Co. Atty.
(No. 5896.)

(Court of Civil Appeals of Texas. Austin.
Nov. 28, 1917. On Motion for Rehearing,
June 25, 1918.)

1. APPEAL AND ERROR ☞719(1) — FUNDA-
MENTAL ERROR—REVERSAL.

In an election contest, where court, by con-
sent of both sides, heard law and evidence to-
gether, and entered judgment sustaining a gen-
eral demurrer, there was not such fundamental
error as required a reversal, where not com-
plained of on appeal.

2. SCHOOLS AND SCHOOL DISTRICTS ☞97(4)—
ISSUANCE OF BONDS—LEGAL VOTERS.

In order to vote at an election to determine
whether bonds shall be issued to build a school-
house, one must reside in and own property in
the school district.

On Motion for Rehearing.

3. APPEAL AND ERROR ☞662(4)—STATEMENT
OF FACTS—CONCLUSIVENESS.

The statement of facts, signed and certified
to by the trial judge, imports absolute verity.

4. APPEAL AND ERROR ☞842(2)—FINDING OF
FACT.

In an election contest, a declaration in a
judgment that parties referred to were quali-
fied voters, except for certain reasons, would not
constitute a finding of fact, but would be a
conclusion of law; hence appellants would not
be entitled to have it given controlling effect
in disposing of the appeal.

5. ELECTIONS ☞295(1) — CONTEST OF ELEC-
TION—SETTING ASIDE—EVIDENCE.

Result of an election should not be set
aside until it is clearly made to appear that the
election was not properly and fairly held.

6. SCHOOLS AND SCHOOL DISTRICTS ☞97(4)—
BOND ELECTIONS—SETTING ASIDE.

In contest of a school election to determine
whether bonds should be issued to build a
schoolhouse, upon the ground that certain per-
sons were unlawfully denied the right to vote,
it devolved upon contestants to show, by clear
and satisfactory testimony, that such persons
possessed all the necessary qualifications of
voters.

7. SCHOOLS AND SCHOOL DISTRICTS ☞97(4)—
CONTEST OF BOND ELECTION—RESIDENCE OF
VOTER.

In contest of school election, evidence *held*
insufficient to show that one denied right to
vote resided within the school district.

8. CONSTITUTIONAL LAW ☞29 — SCHOOLS
AND SCHOOL DISTRICTS ☞97(4)—CONTEST
OF ELECTION—NOTICE OF CONTEST.

In a contest of a school election to deter-
mine whether bonds should be issued, it is es-
sential, to give the district court jurisdiction,
that the county attorney be served with a writ-
ten notice of contest and statement of the
grounds on which the contestant relies, and
service of petition of contest upon such attor-
ney, with verbal notice, was insufficient.

Appeal from District Court, San Saba
County; N. T. Stubbs, Judge.

Contest of school election by L. W. Barker
and others, in which A. B. Wilson, county
attorney, was made contestee. Judgment for
contestee, and the contestants appeal. Af-
firmed.

See, also, 189 S. W. 748.

Walker & Burleson, of San Saba, for appel-
lants.

KEY, C. J. An election was held in school
district No. 22 of San Saba county to deter-
mine whether or not bonds should be issued
in the sum of $10,000 for the purpose of
building a schoolhouse. There were 102 votes
cast, 52 in favor of, and 50 against, the is-
suance of the bonds; being a majority of 2
in favor of the proposition. Thereafter L.
W. Barker, Hugh Barber, and J. H. Hamlin
brought this action for the purpose of con-
testing the election, and, among other things,
alleged that the officers who conducted the
election refused to permit three qualified vot-
ers to vote in the election; that, if they had
been permitted, they would have voted
against the issuance of such bonds, which
would have resulted in the defeat of the
proposition voted upon. As authorized by
statute, the county attorney was made the
contestee, and, among other pleas, he filed a
general demurrer, a special exception, and a
general denial.

[1] At the trial, by consent it seems of both
sides, the court pursued the unsatisfactory
course of hearing the law and the evidence
together, and then entered judgment sustain-
ing the general demurrer and special excep-
tion to the contestants' petition; and also
holding that the facts failed to sustain cer-
tain material and necessary allegations; and
therefore judgment on the merits was render-
ed in favor of the contestee and against the
contestants upon the facts.

As stated before, that method of procedure
seems to have been satisfactory to the re-
spective parties, and, however irregular it
may have been, it is not complained of in
this court, and does not constitute such
fundamental error as requires a reversal.

The contestants have brought the case to
this court, and seek to have it reversed, their
contention being, first, that the trial court
erred in sustaining the general demurrer and
special exception to their petition; and, sec-
ond, that error was committed in holding
that the proof failed to show that two of the
voters alleged in appellants' petition to have
been denied the right to vote were qualified
voters. If either of these contentions be
decided against appellants, the judgment
must be affirmed. The demurrer and excep-
tion were sustained because the trial court
held that the delivery of their original peti-
tion by appellants to the county attorney,
and his reading the same before it was filed,
did not constitute such service of written no-
tice to the county attorney as is required by
statute as a prerequisite to the commence-
ment of an election contest; and whether or
not that ruling was correct need not be de-
cided by this court, because the other ground
upon which the court based its judgment
against appellants is sustained by the record.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[2] According to the statement of facts it was not shown that either Clay Walker or Ray Walker, two of the persons alleged to have been unlawfully denied the right to vote, resided or owned property in school district No. 22 of San Saba county. Such proof was necessary to constitute them legal voters, and that, proof not having been made, the proper judgment was rendered, and it is here and now affirmed.

Affirmed.

## On motion for Rehearing.

This motion has been given careful consideration, with the result that we feel compelled to adhere to our former decision.

The motion asserts that this court erred in holding that the record did not show that Clay Walker and Ray Walker resided in, or owned property in, school district No. 22 of San Saba county. The motion concedes that the statement of facts does not show that any witness testified to that effect, but it is contended that the inference is absolutely conclusive that the two persons referred to lived at Cherokee, which was in district No. 22, at which place the election was held.

[3] It is further stated in the motion that the statement of facts, which was not agreed to by the attorneys, but made by the trial judge over two months after the trial, "is very meager and incomplete." But that statement, however true it may be in fact, cannot be considered by this court in disposing of the case. The statement of facts is signed and certified to by the trial judge, and therefore it imports absolute verity, and must be accepted by this court as such.

The motion also states, and makes a partial but incomplete quotation from the judgment to show, that the trial court held that W. S. Reeves and Clay Walker were qualified voters. The motion contains the further statement that the judgment finds that Ray Walker was entitled to vote.

The trial judge filed no findings of fact, and, to show that the above statements are not sustained by the record, we here copy that portion of the judgment which deals with the testimony:

"And the court is of the further opinion, after hearing the evidence submitted, that the two parties alleged by contestants, viz. W. S. Reeves and Clay Walker, as being qualified voters, were not entitled to vote at the election sought to be contested herein, because they failed to comply with the law; the said Reeves failing and refusing to make the affidavit required by the election judges, and the said Walker failing to properly present himself at the polling place and demanding the right to vote. It is therefore ordered by the court that the contestors take nothing by this suit, that same be dismissed, and that the injunction heretofore issued and served in this cause be in all things dissolved, and that the contestants pay all costs in this behalf expended."

[4-6] That portion of the judgment which precedes that quoted sustains the contestee's exceptions to the contestants' petition, and holds that the court had no jurisdiction, because of the fact that the contestants had failed to properly and legally serve the contestee with notice of intention to contest the election; and then the judgment proceeds as quoted above. It will be noted that it does not hold that W. S. Reeves and Clay Walker were qualified voters, but states that they were so alleged to be by contestants. The judgment then proceeds to give the trial judge's reason why the two persons referred to were not entitled to vote, even if they were otherwise qualified; but it does not hold that they were so qualified. Ray Walker, the other person who was not permitted to vote, is not mentioned in the judgment, and we cannot agree with counsel for appellants that it "is virtually a judgment that Ray Walker should have been allowed to vote." But, even if the court had declared in the judgment that the three parties referred to were qualified voters and entitled to vote, except for the reasons stated in the judgment, such declaration would not have constituted a finding of the facts necessary to show that they were qualified voters. Such a declaration would be more a conclusion of law than a finding of fact, and therefore appellants would not be entitled to have it given controlling effect in disposing of the appeal. In a democratic government, wherever the people are authorized to determine for themselves, by a majority or other character of vote, any matter pertaining to the public interest, the result of such election should not be set aside by the courts, until it is clearly made to appear that the election was not properly and fairly held. And, therefore, when an election is contested upon the ground that one or more persons were unlawfully denied the right to vote, it devolves upon those who so attempt to set aside a declared result of the election to show by clear and satisfactory testimony that such persons possessed all the necessary qualifications of a voter. This rule of law is not controverted by counsel for appellants, nor is it denied that the burden rests upon them to show that Mr. Reeves and the two Walkers resided in school district No. 22.

In the motion for rehearing and argument in support thereof, it is stated that the proof referred to was made, but that the judge inadvertently omitted the same from the statement of facts; but, notwithstanding such omission, it is contended that the testimony set out in the statement of facts, considered in connection with the judgment, shows that they did so reside. That contention may be correct in so far as Mr. Reeves is concerned, because he testified that he owned a farm near Cherokee, in school district No. 22, and that he was residing thereon at the time he offered to vote. No witness testified that either of the Walkers resided in that district.

The proof shows that the election was held at a place called "Cherokee," which we presume, from the circumstances, is a small town or village, but whether all or only part of

it is within school district No. 22 does not affirmatively appear in the statement of facts. Clay Walker testified:

"I was 21 years old in September, 1915. On the 31st day of January, 1916, I went to the tax collector's office and obtained my exemption certificate, and at the same time I secured an exemption certificate for my twin brother, Ray Walker. I had no written authority from him, but the tax collector gave his exemption to me. I owned 15 or 16 head of cattle and 2 head of horses on the 1st day of January, 1916. My father had rendered said property for taxes before I became of age and had paid the taxes on same for 1915. I had never voted before. On the day of the election I went to the voting place for the purpose of voting, and the judges refused to allow me to vote. I had with me my exemption certificate and also the exemption certificate of my brother Ray. The judges and myself had considerable argument, but they refused to let me vote because the tax rolls did not show that I paid any taxes. They claimed that I had to be a taxpayer. I told them what property I owned. The judges nor any one else did not request me to sign an affidavit. I did not know that I had to sign an affidavit. I did not know anything about it, as this was my first vote. I was born and raised at Cherokee, and all the judges knew me. They refused to let me vote because I had not paid any taxes and my name was not on the tax rolls. If I had been permitted to vote, I would have voted against the issuance of the bonds. After I left the voting place, which was at the schoolhouse, and went down in town, I met my twin brother Ray, and told him that they would not let me vote. I gave him both exemption certificates and he started off in the direction of the voting place. I did not offer to make an affidavit that I owned the property that I stated that I owned nor that I was a qualified voter."

Ray Walker's evidence was as follows:

"I am a twin brother of Clay Walker, and on the day that the bond election was held at Cherokee I met my brother Clay in Cherokee. He gave me our exemption certificates, and he told me that they would not let him vote and did not suppose they would let me vote. I started to the voting place, and when about 50 or 60 steps from the schoolhouse where they were voting I met Mr. Hamner, who was one of the election officers, and he told me that they had refused to let my twin brother Clay vote, and he supposed that they would not allow me to vote. I went to the schoolhouse, and at the door I asked if they would let me vote, and some one said, 'No, you are not a qualified voter.' I don't know who made this statement, don't know whether it was one of the officers of the election or not; the officers holding the election were some six or eight feet to the west of this door. I did not offer to make an affidavit, nor did I demand the right to vote; that is all I said. When some one said no that I could not vote I turned and walked off. I saw Mr. Barber, Thaxton, and Gay; they were officers of the election. Don't remember whether they spoke to me or not. I was the owner of several head of cattle on January 1, 1916. These cattle were rendered for taxes by my father for the year of 1915, and he paid the taxes on same for that year. I had lived near Cherokee all of my life. All of the judges knew me and that brother Clay and I were twins. Had I been allowed to vote I would have voted against the issuance of the bonds. I did not secure my exemption certificate in person, but had my brother to secure it for me from the collector when he got his. I gave him no written instrument or authority to secure this exemption certificate for me,

205 S.W.—35

but simply told him to get mine when he secured his."

It will be noted that neither of the Walkers testified that he lived in school district No. 22. Clay Walker stated that he born and raised *at* Cherokee, while Ray Walker, his twin brother, testified that he had lived *near* Cherokee all of his life. Two of the officers of the election testified that they knew the two Walkers; that Clay Walker came to the polls and offered to vote, and he was not allowed to do so, because the tax polls furnished the officers did not show he was a taxpayer. One of them testified that Mr. Reeves was not allowed to vote, because they did not believe that he was at that time a resident of precinct No. 22, and he refused to make an affidavit stating that he was such resident.

Counsel for appellants frankly concede, in their written argument in support of the motion for rehearing, that the testimony relating to the residence of the two Walkers is meager and unsatisfactory, but still they contend that it is sufficient to show that both of them reside in school district No. 22.

[7] The concession that the testimony referred to is unsatisfactory, it seems to the writer of this opinion, should be regarded as sufficient reason why this court should not reverse the judgment of the trial court, and set aside the election. While the election was held at a schoolhouse in the town or village of Cherokee, and while we, therefore, assume that the schoolhouse referred to was in school district No. 22, still it does not appear that all of the territory which comprises what was known as Cherokee was within school district No. 22. While the inhabitants of that place may not have been numerous, still it was not shown to be incorporated with fixed boundaries, and, as a matter of fact, its boundaries may have been indefinite. One of the Walkers testified that he was born *at* Cherokee, while his twin brother testified that "I had lived *near* Cherokee all of my life. All of the judges knew me, and that brother Clay and I were twins." And he did not testify, as stated in appellants' motion for rehearing, that he had lived *at* Cherokee all of his life. According to his testimony, the fair inference is that the Walker family, of which he and his twin brother were members, had long resided near, instead of at or in, the village of Cherokee; and therefore if it be conceded, though it was not proved, that the whole village of Cherokee is within school district No. 22, still, if the Walker family only resided near and not in Cherokee, then neither of the Walkers was entitled to vote, because they were not residents of the district in which the election was being held. Hence we decline to change our ruling upon that branch of the case.

[8] However, we have reached the conclusion that the judgment should be affirmed upon another ground, which is the first rea-

son assigned in the judgment for deciding the case against appellants; that is, because it was not shown that proper notice to contest the election was served on the appellee within the time required by law.

The statute regulating contested elections of this character makes the county attorney the contestee, and requires those who desire to contest the election, within 30 days after the return day of the election, to give him notice of such contest in writing, and deliver to him, his agent or attorney, a written statement of the ground on which said contestant relies to sustain such contest, etc. Although the Constitution has been amended so as to confer jurisdiction upon the district court to hear and determine election contests, still it is settled law, and has been so ruled by this court, that the provision of the Constitution referred to is not self-executing, and that, in order to confer jurisdiction, the statute above referred to must be substantially complied with as to the written notice of contest, statement of the ground on which the contestant relies, and the time prescribed for giving the same. Bassel v. Shanklin, 183 S. W. 105. That and other decisions therein referred to follow the ruling made by our Supreme Court in Lindsey v. Luckett, 20 Tex. 516, where it was held that:

"The notice and statement of the grounds on which a party intends to contest the election, * * * which are required to be served on the latter within ten days after return day, are the predicate upon which the power of the county court is set in motion, and without which, within the time prescribed, that court had no jurisdiction to investigate the validity or effects of such election."

In the instant case the undisputed proof upon that subject discloses the following facts: Within less than 30 days after the return day of the election, Hon. Leigh Burleson, as attorney for appellants, delivered to A. B. Wilson, county attorney of San Saba county, contestee herein, the original petition in this case, which at that time had not been filed, and was not filed until long after the expiration of 30 days from the return day. The proof shows that Mr. Wilson read the petition, and the next day, or soon thereafter, at the request of Mr. Burleson, Mr. Wilson returned the petition to him; Mr. Burleson stating that he was going to send it by mail to District Judge Stubbs, who was the judge of the district court of San Saba county. At the same time Mr. Wilson signed a written waiver of issuance and service of process, which waiver was filed with the petition after the expiration of 30 days after the return day of the election. Both Mr. Burleson and Mr. Wilson testified substantially to the same effect in that regard, and their testimony indicates that it was contestants' purpose, and Mr. Burleson verbally so informed Mr. Wilson, to contest the election, and that he intended to file the petition referred to for that purpose. There was no other proof of notice of intention to contest the election.

The statute prescribes that any one intending to contest an election shall, within 30 days after the return day, give to the contestee notice in writing of such intention to contest, and deliver to him, his agent or attorney, a written statement of the ground on which such contestant relies to sustain such contest. This statute is mandatory, and, unless complied with within the time stated, the court has no jurisdiction to entertain the contest. The statute requires that the written document or documents delivered to the contestee shall contain notice of two separate and distinct facts, which are: (1) The contestants' intention to contest the election; and (2) the ground on which such contestant relies to sustain such contest. Notice of both of these facts is essential to invoke the jurisdiction of the court to hear and determine the contest, and proof of one, without proof of the other, is of no avail. It is also required by the very terms of the statute that notice of each fact must be in writing; and therefore verbal notice, though it may be just as satisfactory to the contestee, is not such compliance with the statute as confers power upon the court to hear and determine the contest.

Applying that statute to the case at bar, we think it must be held, as was done by the learned trial judge, that the contestants in this case failed to serve upon, or deliver to, the contestee any written notice of their intention to contest the election. It may be conceded that delivery to him of the petition, setting forth the ground upon which it was claimed that the election was illegal, constituted compliance with one portion of the statute; but it contained no notice notifying the contestee that it was the intention of the contestants to file that petition in court and use it as a basis of a contest. It is no answer to that proposition to say that the contestee knew from what Mr. Burleson told him that it was the intention of the contestants to contest the election. Such information was not in writing, and therefore it did not constitute compliance with the statute.

Our decision upon this point is not in conflict with Messer v. Cross, 26 Tex. Civ. App. 34, 63 S. W. 169, decided by the Galveston Court of Civil Appeals. In that case a petition to contest the election was filed; citation was issued thereon and served upon the contestee, together with a copy of the petition, within less than 30 days after the return day of the election; and the court held that the copy of the citation, which was delivered to the contestee, constituted substantial compliance with the provision of the statute requiring written notice of intention to contest; and that the copy of the petition, which was delivered to the contestee, constituted similar compliance with the other

provision, requiring a written statement of the ground of contest relied upon by the contestant. We do not controvert the correctness of that decision, because in that case the citation that was served upon the contestee constituted notice of the intention to contest; but nothing of that sort occurred in this case.

In addition to the cases cited, we refer to Wright v. Fawcett, 42 Tex. 203; Cauthron v. Murphy, 61 Tex. Civ. App. 462, 130 S. W. 671; Dunne v. Sayers, 173 S. W. 503.

Hence we conclude that the judgment of the trial court must be sustained for the reason just stated.

Motion overruled.