**Dick GOTTLIEB, Appellant,**

v.

**Fred HOFHEINZ, Appellee.**

**No. 16419.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Feb. 20, 1975.

Rehearing Denied April 17, 1975.

Second Rehearing Denied May 22, 1975.

David H. Berg, Houston, for appellant.

Frank J. Knapp, Steven C. Oaks, Roger T. Baker, Houston (Butler, Binion, Rice, Cook & Knapp, Houston, of counsel), F. Russell Kendall, Jarrell D. McDaniel, Travis C. Broesche, Houston (Vinson, Elkins, Searls, Connally & Smith, Houston, of counsel), for appellee.

PEDEN, Justice.

Election contest. In the runoff election for the office of mayor of the City of Houston held on December 4, 1973, Mr. Fred Hofheinz was certified to have received 2,806 more votes than Mr. Dick Gottlieb.

This is an appeal from the granting of a motion for summary judgment in favor of the contestee, Mr. Hofheinz. The judg-

ment stated that the contestant's pleadings failed to raise a genuine issue as to any material fact that would entitle the Contestant to any relief under the Texas Election Code.

The first two points of error of the Contestant, Mr. Gottlieb, are that his petition raises genuine issues of material fact 1) under Art. 9.14, Texas Election Code, V. A.T.S., and 2) under Art. 9.15, Texas Election Code; his other two points are that 3) the provisions of Art. 8.08, Subd. 3, of the Texas Election Code are mandatory and 4) summary judgment may not properly be granted in an election contest.

Article 9.14 of the Texas Election Code provides:

"If any vote or votes are found upon the trial of any contested election to be illegal or fraudulent, the trial court shall subtract such vote or votes from the poll of the candidate who received the same, and after a full and fair investigation of the evidence shall decide to which of the contesting parties the office belongs."

Article 9.15 of the Election Code states:

"If it appears on the trial of any contest provided for in Section 134 [art. 9.-06] that it is impossible to ascertain the true result of the election as to the office about which the contest is made, either from the returns of the election or from any evidence within reach or from the returns considered in connection with other evidence, or should it appear from the evidence that such a number of legal voters were, by the officers or managers of the election, denied the privilege of voting as, had they been allowed to vote, would have materially changed the result, the court shall adjudge such election void, and direct the proper officers to order another election to fill said office; which election shall be ordered and held and returns thereof made in all respects as required by the general election laws of the State."

The Contestee-appellee contends that the Contestant's petition seeks to disqualify numerous votes for failure to comply with provisions of the Texas Election Code which are merely directory, not mandatory; that if these challenges are disregarded only 2289 votes remain under attack and Hofheinz's plurality was 2806, so the 2289 that are challenged can't change the outcome. Further, that an additional 1,206 of the 2289 are votes challenged on legally insufficient grounds, and appellant's pleadings raise no issue as to their validity.

The record reflects that on the ninth day after the filing of the Contestant's original petition, the Contestee filed special exceptions. Contestant filed an amended petition thirteen days later and Contestee again promptly filed special exceptions. They were heard by the trial court within two weeks (Feb. 25), and the Contestant filed his second amended original petition on March 11. Contestee moved for summary judgment on April 25, 1974 and on the next day the Contestant filed his third amended original petition. Contestee again moved for summary judgment on May 23, 1974. It was heard on June 3 and signed on June 11.

No summary judgment proof was offered in support of the motion or in opposition to it.

■ Situations in which a defendant's motion for summary judgment on the pleadings can be sustained are very limited. Swilley v. Hughes, 488 S.W.2d 64 (Tex. 1972). In that case the trial court apparently had granted summary judgment on the theory that the plaintiff's factual allegations were inadequate. Our Supreme Court held that since it was not a case in which the facts alleged by a plaintiff established either the absence of a right of action or an insuperable barrier to a right of recovery, a take-nothing summary judgment on the pleadings could not stand. Rules 90 and 91, Texas Rules of Civil Procedure were cited.

"When a motion is directed solely to the pleadings and is not supported by affidavits, depositions, admissions, or other extrinsic evidence, the motion is closely analogous to a special exception challenging the sufficiency of the opponent's pleading as a matter of law. It may contend that the petition upon its face shows that the court is without jurisdiction to determine the claim asserted, or may challenge the sufficiency of the petition to allege an enforceable claim, or assert that it shows on its face the existence of a defense; or it may urge that the answer fails to state a tenable defense. No supporting or counteraffidavits are necessary on such a motion. The court takes as true every allegation of the pleading against which the motion is directed. If the pleading, when liberally construed, is sufficient in law to show a fact issue, the motion will be overruled. On the other hand, if the pleading on its face conclusively shows that the moving party is entitled to judgment, the motion will be granted." 4 McDonald, Texas Civil Practice (1971 rev.) 152, § 17.26.8.

One of the basic disputes in this case is over several provisions of the Election Code; are they mandatory or merely directory?

We turn to the Contestant's current pleading. He alleged in paragraph CX that 14,984 votes cast in some 24 precincts were illegal because those casting them had failed or refused to sign the signature roster as required by Article 8.08 of Vernon's Texas Election Code. He argues that such requirement is mandatory, and that if the 14,984 votes are declared invalid the outcome of the election would be changed because 9,724 of them were cast for the Contestee and 5,260 were cast for the Contestant. That if these votes were subtracted, the Contestant would have a majority of 1,658 votes.

■ Article 8.08 of the Election Code contains these provisions for use of a signature roster:

"Subdivision 1. An election officer shall receive from the voter his registration certificate, when he presents himself to vote. If the voter has lost or mislaid his certificate or left it at home, he shall make an affidavit of that fact. The election officer shall announce the voter's name in an audible voice and shall ascertain that his name appears on the list of registered voters or shall satisfy himself, in the manner stated in Section 48a of this Code, that the voter is a registered voter and is entitled to vote in that precinct. He shall then require the voter to sign the signature roster provided for in Subdivision 3 of this Section . . .

" . . .

"Subdivision 3. There shall be kept at each polling place a signature roster of persons offering to vote at the election. Each person offering to vote shall sign the roster if he is able to do so . . ."

We find no provision in the Texas Constitution requiring voters to sign a signature roster, and we find nothing in the provisions of Art. 8.08 which by express language or by any reasonable implication evidences an intention on the part of the legislature that a qualified voter shall not vote or that his vote shall not be counted if he fails or refuses to sign the signature roster. We conclude that the legislature intended to make the signature roster provisions of Art. 8.08 directory, not mandatory.

Having decided that the provisions in question are not mandatory we still must consider the well-established Texas rule that at the trial stage of election contest proceedings, proof of violations of merely directory provisions of the Election Code may cause the disqualification of votes if it is established that such noncompliance was the result of fraud or serious misconduct and that it changed the result of the election. In deciding our case we apply this rule of law and the cited holding in Swil-

ley v. Hughes, supra, to the allegations in the Contestant's current petition.

Although the thrust of the allegations in paragraph CX is that the signature roster provisions are mandatory, not that the failure or refusal of the 14,984 voters to sign the roster was done fraudulently or was caused to be done fraudulently, there are allegations of fraud in the petition which, liberally construed (as they must be), relate to this paragraph. For example, in the opening portion of this petition the Contestant stated: ". . . this court is requested to set aside the results of that election because of the irregularities and fraud that permeated the conduct of the mayoral race and changed the outcome, for the following reasons: . . ."

We hold that the Contestant's allegations as to the 14,984 votes do not establish the absence of his right of action or an insuperable barrier to his right of recovery, so summary judgment was not properly granted as to those allegations. Swilley v. Hughes, supra. Allegations of fact must be made to support the label of fraud if special exceptions are to be withstood, but we hold that summary judgment will not take the place of exceptions under these circumstances.

We look to other allegations in the Contestant's current pleading.

He alleged in paragraphs, I, III, IV and CVII that the votes cast by 2,493 voters (by our count) should be disqualified because their precinct judges did not acknowledge the affidavit pages they signed stating that their voter registration certificates were missing or lost.

Absent any allegation and proof that these votes were fraudulently induced or cast, it seems clear that the statutory provisions were directory and would not result in disqualification of the voters in question. It was held in Ramsay v. Wilhelm, 52 S.W.2d 757 (Tex.Civ.App.1932, writ ref.) that failure of a voter to sign the affidavit of lost poll tax did not dis-

qualify him from voting or render his ballot illegal, absent fraud, unfairness in holding the election or tampering with ballots or returns.

In paragraph CVII, the Contestant alleged only that the failure to sign and attest the affidavits was not done as required by the statute. Fraud was not alleged, but at the end of a number of other paragraphs making this and other complaints about the conducting of the election he made this allegation:

"Each and every vote enumerated above is in violation of the Election Code and should be deducted from the previously certified total; alternatively these fraudulent votes cannot be separated because voting machines were used and therefore the entire precinct should be set aside; moreover in this precinct as well as others, the true will of the people can never be determined when fraud permeates the polling place."

We find no requirement in the Texas Election Code that precinct judges sign and acknowledge each page of the affidavit of lost or missing certificates. However, we hold, for the reasons stated in ruling on the voter roster allegations, that summary judgment will not lie as to these affidavit allegations.

In paragraph CVIII of the Contestant's current pleading he alleged:

"Illegal and fraudulent votes were procured on behalf of Contestee Hofheinz in that cash bonuses were offered to precinct judges prior to the election by a group headed by a Hofheinz campaign official, which official is at present an official of the Hofheinz administration. This money was to be paid and was paid, to precinct judges who procured the highest percentage of voters in their precincts on election day, December 4, 1973.

"The precinct judges, unduly influenced by the offer and payment of cash inducements, in turn unduly influenced voters in favor of Contestee on election

day, December 4, 1973, and thereby changed the result of the election; therefore these votes must be deducted from the previously certified total."

■ These allegations do not identify any voters or election judges, do not contend how many voters were influenced and do not suggest what, if anything, was improper about the offer and payment of bonuses to get out the vote, so they appear vulnerable to attack by special exceptions.

However, it appears to us that these allegations, like others which we will not discuss, fall within the ambit of Swilley v. Hughes, so summary judgment cannot stand as to any of them.

We do not reach Contestant's point asserting that summary judgment is not proper in an election contest.

The Contestee has presented this cross point of error:

"The Trial Court Erred in Overruling Appellee's 'Plea to the Jurisdiction' in that Appellant Failed to Comply with the Strict, Mandatory Jurisdictional Requirements of Notice of Intention to File an Election Contest Required by Article 9.-03 of the Texas Election Code."

Art. 9.03 of the Election Code provides:

"Any person intending to contest the election of any one holding a certificate of election for any office mentioned in this law, shall within thirty (30) days after the return day of election, give him a notice thereof in writing and deliver to him, his agent or attorney, a written statement of the ground on which such contestant relies to sustain such contest. By the 'return day' is meant the day on which the votes cast in said election are counted and the official result thereof declared."

The record reflects that return day of the election was December 19, 1973, and that on January 16, 1974, counsel for the Contestant delivered to the Contestee a letter whose pertinent parts stated:

"I have been retained by Dick Gottlieb to represent him in a contest of the December 4, 1973 run-off election for the Office of Mayor, City of Houston. Pursuant to the Texas Election Code, Article 9.03, I inform you that the grounds for such contest are as follows:

[here are set out five numbered paragraphs alleging various irregularities.]

"Our investigation covered all of the precincts in the City; we have concluded that you were mistakenly certified as Mayor of the City of Houston by the City Counsel on January 2, 1974."

Attached to the letter was a copy of the Contestant's original petition in this cause. It had not yet been filed, but it was filed later that day. The Contestee was not served with citation in this case until January 23, 1974, several days after 30 days after return day of the election.

The case most often cited in deciding whether adequate notice was given is Barker v. Wilson, 205 S.W. 543 (Tex.Civ. App.1917, no writ). The court held:

"The statute requires that the written document or documents delivered to the contestee shall contain notice of two separate and distinct facts, which are: (1) The contestants' intention to contest the election; and (2) the ground on which such contestant relies to sustain such contest. Notice of both of these facts is essential to invoke the jurisdiction of the court to hear and determine the contest, and proof of one, without proof of the other, is of no avail. It is also required by the very terms of the statute that notice of each fact must be in writing; and therefore verbal notice, though it may be just as satisfactory to the contestee, is not such compliance with the statute as confers power upon the court to hear and determine the contest.

"Applying that statute to the case at bar, we think it must be held, as was done by the learned trial judge, that the contestants in this case failed to serve

upon, or deliver to, the contestee any written notice of their intention to contest the election. It may be conceded that delivery to him of the petition, setting forth the ground upon which it was claimed that the election was illegal, constituted compliance with one portion of the statute; but it contained no notice notifying the contestee that it was the intention of the contestants to file that petition in court and use it as a basis of a contest. It is no answer to that proposition to say that the contestee knew from what Mr. Burleson told him that it was the intention of the contestants to contest the election. Such information was not in writing, and therefore it did not constitute compliance with the statute."

■■■■■ We have carefully examined the Texas authorities on this point. It is true that the provisions of Art. 9.03 must be strictly met if a contestant is to invoke the jurisdiction of a district court in an election contest, but we cannot say the trial court erred in impliedly finding that the written notice given by the Contestant constituted notice of intention to contest the election.

In Walker v. Thetford, 418 S.W.2d 276 (Tex.Civ.App.1967, writ ref. n. r. e.), the attorney for the contestants wrote a note on a copy of the petition he was to file later that day stating:

"A copy of this petition has this the 26th day of March, 1966, been delivered to Frank C. Dickey, Sr., County Attorney of Coke County, Texas, notifying him that this election is being contested and the grounds upon which such contest is based. /s/ Dell Barber."

In that case the court held that the county attorney was informed in writing, before expiration of thirty days following the canvass, that contestants intended to contest the election on the grounds set out in the petition. In that case, as in ours, the petition was filed with the district clerk later on the same day that the notice had been given.

We reverse the judgment of the trial court and remand it for further proceedings.

## ON MOTION FOR REHEARING

EVANS, Justice (concurring).

On Motion for Rehearing, contestee vigorously asserts that contestant's allegations fail to state a legal claim for relief as an election contest under the Texas Election Code. He cites cases such as Moore v. Pittman, 280 S.W. 873 (Tex.Civ.App.1926, no writ), and Roberts v. Hall, 167 S.W.2d 621 (Tex.Civ.App.—Amarillo 1942, no writ), which state the requirement that a contestant in an election contest must allege with particularity the identity of the officials involved in the alleged fraud or irregularity, the votes which were influenced and how this affected the outcome of the election.

Contestant, on the other hand, points out the difficulty of obtaining specific information in a large city-wide election, particularly where voting machines have been used, and urges the relaxation of pleading requirements upon the authority of cases such as Meriwether v. Stanfield, 196 S.W. 2d 704 (Tex.Civ.App.—Beaumont 1946, no writ), and Plambeck v. Cisco Independent School District, 363 S.W.2d 878 (Tex.Civ. App.—Eastland 1963, no writ).

A motion for summary judgment may be granted on the pleadings where the plaintiff's petition fails to state a legal claim for relief. Hidalgo v. Surety Savings & Loan Ass'n, 462 S.W.2d 540, 543 (Tex. 1971). However, as a general proposition, a motion for summary judgment does not take the place of special exceptions and the pleadings should be settled prior to the hearing of such motion. Andrews v. Austin Motor Truck Co., 259 S.W.2d 772, 774 (Tex.Civ.App.—Austin 1953, no writ); Texas Department of Corrections v. Herring, 513 S.W.2d 6, 10 (Tex.1974). The

sequence of procedural events presents a close question as to the applicability of this proposition.

The trial court sustained contestee's special exceptions and required contestant to replead by March 11, 1974 specifically alleging the names, addresses, precinct numbers and polling places of voters whose votes allegedly had been illegally or fraudulently cast, how many such votes were cast and how such votes would materially have affected the outcome of the election. Subsequent to this ruling, which set the standard of pleading in the case, contestant filed a second amended original petition listing identified precincts and voters but also carrying over the general allegations of fraud and illegality contained in his original petition.

On April 25, 1974 contestee filed his first motion for summary judgment, giving notice that such motion would be heard on May 6, 1974. In this motion contestee made reference to the court's ruling on special exceptions and asserted that contestant had failed to state a cause of action since an analysis of his allegations failed to show a sufficient number of questioned votes to have changed the outcome of the election. The day following service of this motion, April 26, 1974, contestant filed his third amended petition which contained additional specific allegations but also carried forward the general allegations of fraud and illegality. In response to this petition, contestee on May 23, 1974 filed his second motion for summary judgment in which he again asserted that contestant's pleading failed to allege a legally sufficient basis for an election contest under the Texas Election Code.

As shown in our original opinion, paragraph CVIII of contestant's third amended petition urges that "illegal and fraudulent votes" were procured on behalf of contestee by the offering of cash bonuses to precinct judges who obtained the highest percentage of voters in their precinct on election day and who allegedly influenced vot-

ers in favor of contestee. As stated in our opinion these allegations appear vulnerable to special exceptions in that they fail to identify the election officials involved, the votes influenced by them and how this materially affected the outcome of the election. Although no additional special exceptions were levied against this particular paragraph, its allegations did not comply with the repleader requirements of the court's prior ruling in the case. The question then is whether these allegations may be considered as stating a legal claim for relief precluding disposition of the case upon motion for summary judgment.

Election officials are presumed to have done their duty and it is the contestant's burden in an election contest to allege and prove by specific allegations that the conduct of the election abrogated the will of the people. Jordan v. Westbrook, 443 S. W.2d 616, 618 (Tex.Civ.App.—San Antonio 1969, no writ); Moore v. Pittman, supra. It is important that our courts diligently protect against such contests being aired solely for political purpose and that such contests be heard only upon triable issues developed through appropriate pretrial procedures.

However, where special exceptions have been sustained and the plaintiff fails or refuses to replead in accordance with the ruling of the court, the proper method of disposition is by order dismissing the case with prejudice. Farias v. Besteiro, 453 S. W.2d 314, 317 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.). A summary judgment is not the proper remedy in such a case. Meyer v. Wichita County Water Imp. Dists. Nos. 1 and 2, 265 S.W. 2d 660 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n. r. e.).

Where the petition states a legal basis for relief, even though not pleaded with the particularity which may be required upon exception, the petitioner's claim should not be summarily denied. The entry of a summary judgment, in effect, precludes further opportunity to amend. Tex-

as Department of Corrections v. Herring, supra. Since it does not appear from the face of contestant's petition that a legal claim for relief cannot be stated upon further repleader in conformity with the trial court's order, a summary judgment should not have been rendered on the pleading.

I concur in the denial of contestee's motion for rehearing.