Earl GOODEN, et al., Appellants,

v.

Eugene TIPS, M.D., Appellee.

No. 12–81–0075–C.

Court of Appeals of Texas, Tyler.

April 28, 1983.

Barney L. McCoy, Deirdre Darrouzet, Houston, for appellants.

Keven Dubose, Ryan & Marshall, Houston, for appellee.

McKay, Justice.

This is an appeal from a summary judgment. Earl and Mellie Gooden originally brought suit against Edith and Mearle Goodpasture, seeking damages for personal injuries sustained by Earl Gooden when he was struck by a car driven by Edith Goodpasture. During discovery proceedings, the Goodens learned that at the time of the collision, Edith was under the influence of the drug Quaalude, which had been prescribed for her by Dr. Tips. Thereafter the Goodens amended their petition to include Dr. Tips as a defendant, alleging that he was negligent in prescribing said drug for Edith and in failing to warn her not to drive an automobile while under the influence of said drug. Dr. Tips then filed a motion for summary judgment based solely upon the pleadings, alleging that since there was no doctor-patient relationship between himself and the plaintiff there was no duty on his part owed to the plaintiff. The trial court granted Dr. Tips' motion for summary judgment, and thereafter granted the joint motion of the parties to sever the cause of action against Dr. Tips from the cause of action against the Goodpastures. The Goodens then perfected their appeal from the summary judgment in favor of Dr. Tips.

In their sole point of error, appellants contend the trial court erred in granting Dr. Tips' motion for summary judgment because genuine issues of material fact exist which preclude summary judgment.

At the outset we observe that Dr. Tips' motion for summary judgment was directed solely to appellants' pleadings and was not supported by affidavits, depositions or other summary judgment proof. Therefore this court takes as true every allegation of the pleadings against which the motion is directed. *Holmes v. Canlen Management Corp.*, 542 S.W.2d 199, 201 (Tex.Civ.App.— El Paso 1976, no writ); *Wood Truck Leasing v. American Auto Ins. Co.*, 526 S.W.2d 223, 224–5 (Tex.Civ.App.—San Antonio 1975, no writ); *Gottlieb v. Hofheinz*, 523 S.W.2d 7, 10 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd); *Garza v. Perez*,

443 S.W.2d 855, 857 (Tex.Civ.App.—Corpus Christi 1969, no writ). All doubts as to the existence of a genuine issue of material fact are resolved against the movant. *Garza v. Perez, supra.* If the pleading, when liberally construed, is sufficient in law to show a fact issue, the motion for summary judgment should be denied. *Holmes v. Canlen Management Corp., supra; Gottlieb v. Hofheinz, supra;* 4 McDonald, Texas Civil Practice § 17.26.8 (rev. 1971).

Paragraph V of Plaintiff's Fourth Amended Original Petition alleges:

For approximately twenty (20) years prior to this collision, Defendant, Edith Goodpasture, was under the care and treatment of Defendant, Eugene Tips, M.D. Dr. Tips treated Defendant, Edith Goodpasture, for various medical problems, including depression and an ensuing drug abuse. As a result of his observation and treatment, Defendant, Dr. Tips, knew that Defendant, Edith Goodpasture, had a long history of abusing drugs, and could not be expected to take the medicine prescribed for her in the manner intended. Defendant, Dr. Tips, furthermore, did not warn Defendant, Edith Goodpasture, not to drive an automobile, or operate machinery, while under the influence of such drugs, including Quaalude, that were prescribed for Defendant, Edith Goodpasture, by Defendant, Dr. Tips. In continuing to prescribe the various drugs for Defendant, Edith Goodpasture, and in failing to warn Defendant, Edith Goodpasture, not to drive an automobile while under the influence of the drugs, including Quaalude, Dr. Tips deviated from the usual and customary care of a psychiatrist and physician in Harris County, Texas, under the same or similar circumstances. Defendant, Dr. Tips, conduct was a proximate cause of the injuries sustained by the Plaintiff, Earl Gooden. Plaintiffs learned of this conduct during discovery proceedings, on or about July 11, 1978.

The pertinent portions of Dr. Tips' motion for summary judgment are set out below:

## I.

Defendant Tips is entitled to judgment as a matter of law because there is no doctor/patient relationship, and therefore no duty, between the Plaintiff, Earl Gooden, and Defendant Tips. In order for any kind of negligence action to lie against a defendant there must first be a duty flowing from the defendant to the plaintiff. In a medical malpractice action, this duty arises only from the existence of a doctor/patient relationship. In this case the only doctor/patient relationship was between Defendant Dr. Tips and Defendant Edith Goodpasture. The Plaintiff was only a third party, wholly unknown to Defendant Tips.

## II.

In support of this motion, Defendant Tips relies solely upon the pleadings and motions that have been filed in this case.[1]

The trial court granted Dr. Tips' motion for summary judgment. Thereafter the parties' joint motion for severance was granted and an order entered to that effect, at which time the summary judgment became appealable. See *Schieffer v. Patterson,* 433 S.W.2d 418 (Tex.1968).

The question presented then, under the facts of this case, is this: When a physician prescribes a drug for his patient which the physician knows or should know has an intoxicating effect, does the physician have a duty to the public to warn that patient not to drive while under the influence of said drug? Or, stated another way, is the physician under a duty to take whatever steps are reasonable under the circumstances to reduce the likelihood of injury to third parties who may be injured by that patient because said patient is under the influence of an intoxicating drug prescribed by the physician? Stated thus, it would seem this is a question of first impression in Texas.

The question of whether a legal duty exists under a given set of facts is a question of law for the court. *Producers Grain Corp. v. Lindsay,* 603 S.W.2d 326, 329 (Tex. Civ.App.—Amarillo 1980, no writ); *Jackson v. Associated Developers of Lubbock,* 581 S.W.2d 208, 212 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); *Taylor v. Colonial Savings Ass'n,* 533 S.W.2d 61, 64 (Tex.Civ. App.—Houston [1st Dist.]) *rev'd on other grounds,* 544 S.W.2d 116 (Tex.1976). We have found no Texas case imposing a duty such as that asserted by appellants, and appellants have cited none. However, we have likewise found no Texas case holding there is no such duty upon a physician under the facts stated above, and appellee has cited none. The cases relied upon by appellee, in our opinion, do not address the issue here presented for the reasons stated below.

Appellee relies upon three Texas cases to support his contention that no duty of care arises on the part of a physician unless a physician-patient relationship exists between the defendant physician and the plaintiff claiming injury. In *Johnston v. Sibley,* 558 S.W.2d 135 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.), the plaintiff claimed he had been injured on the job and submitted a workman's compensation claim alleging that such injury had resulted in

---

1. Although Dr. Tips, both in the trial court and in his brief on appeal, characterizes this as a medical malpractice action, the parties conceded at oral argument that this action cannot be one for medical malpractice, since it is undisputed that no doctor-patient relationship existed between the Goodens and Dr. Tips. Tex. Rev.Civ.Stat.Ann. art. 4590i, § 1.03(a)(4) (Vernon Supp.1982) defines "Health care liability claim" as inter alia, "... a cause of action against ... a physician ... for ... claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to ... *the patient....*" (Emphasis added.)

In a subsequent paragraph in their petition, plaintiffs alleged that notice had been sent to Dr. Tips "pursuant to Article 4590i." The statute took effect after the accident upon which this suit is based occurred, and after the above-quoted pleading was filed, but before the hearing on the motion for summary judgment was held. It appears that said notice was given out of an abundance of caution, in case the provisions of the statute were held to apply to such an action. Since it is conceded that they do not, we treat this action as any other action for personal injuries based on negligence.

permanent partial disability. The workman's compensation carrier employed Dr. Sibley to examine the plaintiff to determine the nature of the injury and whether any disability had resulted therefrom. Based on this examination, Dr. Sibley reported to the insurance company that no disability had resulted to the plaintiff. Plaintiff thereafter sued the doctor for malpractice, alleging that due to the doctor's negligence in failing to diagnose his disability, his claim for workmen's compensation benefits had been denied. The doctor moved for summary judgment on the ground that since no physician-patient relationship existed between the plaintiff and the doctor, the doctor owed no duty to plaintiff to use reasonable care in examining the plaintiff. The doctor's motion was granted, and plaintiff appealed. This court held that when a plaintiff seeks to hold a physician liable in malpractice for negligence *in examining or treating the plaintiff,* he (the plaintiff) must first establish the existence of a physician-patient relationship between himself and the doctor.

In *Childs v. Weis,* 440 S.W.2d 104 (Tex. Civ.App.—Dallas 1969, no writ), the plaintiff's wife, who was seven months pregnant, presented herself at the emergency room of Greenville Hospital with labor pains. The nurse on duty called Dr. Weis who apparently had charge of the emergency room that evening. Dr. Weis advised the nurse to tell Mrs. Childs "to call her [own] doctor in Garland and see what he wanted her to do." The nurse allegedly told Mrs. Childs that Dr. Weis had said "to go to my doctor in Dallas." Mrs. Childs left the hospital and gave birth about an hour later, and the infant died some twelve hours thereafter. Her husband, as next friend of his wife, sued Dr. Weis alleging the doctor was negligent in failing to provide adequate medical care and attention to his wife. The trial court granted Dr. Weis' motion for summary judgment on the ground that there was no evidence to establish a physician-patient relationship between the doctor and Mrs. Childs. On appeal plaintiff contended that a fact issue existed as to whether the physician-patient relationship

had been established. It was plaintiff's position that such relationship had been established under the facts of that case, but the appellate court disagreed, finding an entire absence of evidence of a contract creating the physician-patient relationship. The court held that in absence of a contract creating such relationship, no duty arose on the part of the doctor to do that which an ordinarily prudent physician would do in the proper care and treatment *of his patient.*

Finally, in *Lotspeich v. Chance Vought Aircraft,* 369 S.W.2d 705 (Tex.Civ.App.— Dallas 1963, writ ref'd n.r.e.), an employee of Chance Vought sued the company and its regularly employed physician for damages for defendants' failure to discover and to inform her that she had active tuberculosis, allegedly disclosed by x-rays of her chest taken by defendants as part of a pre-employment physical examination. The trial court sustained defendants' motion for summary judgment. The appellate court affirmed, finding "[t]his was not the usual relationship of physician and patient." The court held that since the doctor was employed by the company and since the examination was wholly for the benefit of the company, the doctor's duty to use reasonable care and skill in conducting the examination ran to the company alone. The court found no Texas cases in point, and added that it found no cases from other jurisdictions imposing a duty on a physician performing a pre-employment physical *to discover* the presence of disease. Thus, since there was no duty to discover the disease, there could be no actionable negligence in their failure to do so.

As previously noted, it is our opinion these cases do not address the issue in the instant case. In each of the cases cited by appellee the plaintiff was the person the doctor examined (or failed to examine). In each instance the plaintiff sought—and failed—to establish a physician-patient relationship between himself or herself and the defendant doctor. In each, the plaintiff sought to hold the doctor liable for negligent treatment of him or her *as a patient.*

On the other hand, in the instant case a physician-patient relationship undisputedly existed between Dr. Tips and Edith Goodpasture, and the plaintiffs below did not seek to establish such a relationship between themselves and the doctor. Nor did they allege Dr. Tips was negligent in treating or failing to treat them *as patients.* Rather, they allege that Dr. Tips was negligent in failing to warn his patient, Edith Goodpasture, not to drive an automobile while under the influence of the intoxicating drug(s) he prescribed for her, and that such negligence was a proximate cause of Earl Gooden's injuries. They contend that the duty breached by the doctor is a duty owed by the doctor to those persons in the general field of danger which should reasonably have been foreseen by the doctor when he administered the drug. Since we find no Texas cases addressing this theory of liability, we look for guidance to other jurisdictions that have addressed this issue.

Our research indicates other jurisdictions have allowed a cause of action by a third party against a physician for negligence in treatment of a patient. The Supreme Court of Washington has found such a duty to exist under facts remarkably similar to those alleged by the plaintiffs below in *Kaiser v. Suburban Transportation System,* 65 Wash.2d 461, 398 P.2d 14 (1965) [hereinafter referred to as *Kaiser*]. Mrs. Kaiser was injured while a passenger on a Suburban Transportation System bus when the bus driver lost consciousness and the bus struck a telephone pole. This lapse of consciousness was attributed to the side effects of a drug (pyribenzamine) which had been prescribed by his doctor, Jack Faghin, for treatment of a nasal condition. The driver testified that the doctor gave him no warning of the possible side effects of the drug and that he had taken the first pill on the morning of the accident. Four doctors, including Dr. Faghin, testified that a warning should be given when the drug is prescribed because of its known side effects.

Mrs. Kaiser brought suit against the bus company and the driver and, in the alternative, against the doctor and his employer, Group Health Cooperative. The doctor and Group Health denied negligence, and were dismissed at the conclusion of the evidence on the grounds that the evidence showed no standard of care to which the doctor was bound, and even if negligent in failing to warn, the driver's negligence was an intervening cause. Thereafter the trial court directed a verdict against the bus company and its driver.

The Washington Supreme Court found that there was evidence in the record that the doctor failed to warn his patient of the dangerous side effects of drowsiness or lassitude that may be caused by taking this drug. The court held, 398 P.2d at p. 16: "This evidence was sufficient to submit the issue of the doctor's negligence to the jury." The court went on to hold:

> The negligence of the bus driver is a jury question, and should the jury find the bus driver to be negligent, the doctor would nevertheless be liable if the jury finds he failed to give warning of the side effects of the drug *since the harm resulting to the plaintiff was in the general field of danger, which should reasonably have been foreseen by the doctor when he administered the drug.*[2] (Emphasis added.)

The factual similarities between *Kaiser* and the instant case are readily apparent. In both the doctor prescribed a drug for his patient which the doctor knew could have detrimental effects on the patient's ability to drive a motor vehicle. In both the harm—injury to a third party occasioned by the impaired driving ability of the patient due to the drug prescribed—was reasonably foreseeable by the doctors when the drug was prescribed. In both the doctor failed to warn his patient not to drive a motor vehicle while under the influence of the drug. And in both the reasonably foreseeable harm did in fact result.

**2.** This sentence is altered somewhat from the version in the original opinion. The modification was made in a per curiam order of the Washington Supreme Court in *Kaiser v. Suburban Transportation System,* 65 Wash.2d 461, 401 P.2d 350 (1965). For clarity, the modified version is used in this opinion.

The Supreme Court of Iowa has also held that, under the proper facts, a physician may be liable to a third party injured by one of the physician's patients, where the physician's negligence in treating his patient is a proximate cause of plaintiff's injury. In *Freese v. Lemmon,* 210 N.W.2d 576 (Iowa 1973), the plaintiff, a pedestrian, was injured by a motorist who suffered a seizure, ran off the road and struck her. The complaint alleged the physician knew the motorist had suffered an earlier seizure and that the physician was negligent in failing to diagnose the cause of the first seizure (epilepsy), *and in failing to warn the motorist not to drive an automobile.* The trial court sustained the physician's motion to dismiss the petition of plaintiffs against him, and plaintiffs appealed. In overturning the trial court's order, the Iowa Supreme Court said:

It occurs to us that the specifications of negligence asserted by plaintiffs in their respective petitions, adequately serve to charge defendant Dieckmann with negligence in failing to employ recognized procedures to determine the cause of Lemmon's first seizure, and that such allegation, coupled with the allegations that Dieckmann:

(a) negligently failed to advise defendant Norman Lemmon not to drive an automobile;

(b) negligently failed to warn defendant Norman Lemmon of the dangers involved in driving an automobile in view of all the facts and circumstances; and

(c) defendant Dieckmann negligently advised the defendant Norman F. Lemmon that he could drive an automobile;

are so specific that it cannot be said that to a certainty it is made to appear plaintiffs have failed to state a claim on which any relief may be granted under any state of facts which could be proved in support of the claims asserted by them.

*Freese, supra* at 579–80.

The Supreme Court of Tennessee has also found such a duty to exist. In *Wharton Transport Corp. v. Bridges,* 606 S.W.2d 521 (Tenn.1980), a truck driver employed by Wharton was involved in a traffic accident, severely injuring several members of the Rains family. After settling the claims of the Rains family, Wharton sued Dr. Bridges—who had certified the driver as fit to drive a truck based on a pre-employment physical examination—for indemnity, alleging that the doctor was negligent in failing to discover the driver's numerous physical disabilities. They alleged these disabilities, and the doctor's failure to discover them, proximately contributed to the accident.

At the conclusion of the evidence, the trial court directed a verdict for the physician on the grounds that Wharton failed to establish that a negligent examination by the doctor was a proximate cause of the accident and that no duty ran from the doctor to the Rains family and thus the doctor could not be required to indemnify Wharton for settlement expenses on their claims. In reversing the trial court's action the Supreme Court said:

We think there is material evidence to support a finding that the injuries suffered by the Rains family were reasonably foreseeable to appellee in that he knew the purpose of the examination and its importance in highway safety and that failure to properly conduct the examination would increase the risk of harm to members of the motoring public. *We are not attempting to make the physician an insurer of highway safety, but his duty to properly conduct the physical examination extends beyond his contractual responsibilities to the driver and the trucking company.* (Emphasis added.)

*Wharton Transport, supra* at 527.

Thus it is apparent that, under proper facts, a physician can owe a duty to use reasonable care to protect the driving public where the physician's negligence in diagnosis or treatment of his patient contributes to plaintiff's injuries. In the cases discussed above as in the instant case, the harm resulting to the plaintiffs was a reasonably foreseeable consequence of the physician's failure to warn his patient not to drive. There, as here, the physicians knew,

or in the exercise of ordinary care should have known, that their patient's condition (whether due to the effects of medication prescribed by the physician or physical disability) could seriously impair the patient's ability to drive a motor vehicle. Thus the harm resulting to the plaintiffs, there as here, "was in the general field of danger which should reasonably have been foreseen by the doctor when he administered the drug," and the doctor was under a duty to take whatever steps were reasonable under the circumstances to reduce the likelihood of injury to other motorists.

We therefore hold that the plaintiffs' petition was sufficient to state a cause of action against the defendant Tips. Summary judgment on the pleadings was thus inappropriate. This means no more than that there are fact issues to be presented to the jury as to whether, based on expert testimony, defendant Tips breached the appropriate standard of care in this case.[3]

In light of appellee's arguments, we point out that we do not hold that a duty arose on the part of Dr. Tips to *control* the conduct of his patient, as was imposed in cases such as *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976); *McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500 (1979); *Lipari v. Sears, Roebuck & Co.,* 497 F.Supp. 185 (D.Neb.1980); and *Bradley Center, Inc. v. Wessner,* 161 Ga.App. 576, 287 S.E.2d 716 (1982). The holdings in those cases were grounded on the fact that the physician had "taken charge" of a third person whom he knew or should have known was likely to cause bodily harm to others if not con-

trolled, and thus under Restatement, Torts 2d, § 319 was "under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." *Bradley Center, supra,* 287 S.E.2d at 720–21. Here there is no allegation that Dr. Tips had "taken charge" of Mrs. Goodpasture, nor is there any allegation that she was a person of violent or dangerous propensities. We hold only that, under the facts here alleged, Dr. Tips may have had a duty to *warn* his patient not to drive. We do not hold he had a duty to *prevent* her from driving, if she so desired.

The holding in *Kaiser v. Suburban Transportation System, supra,* was limited in a like manner. In its directions to the trial court on remand, the court held that "in the event the jury finds that a warning of the side effects of the drug *was given* to the bus driver, then the verdict shall be against the bus company and the driver *only.*" 398 P.2d at 19 (Emphasis added). We agree. Thus if the evidence developed at trial in the instant case shows that Dr. Tips *did* warn Mrs. Goodpasture not to drive an automobile while under the influence of the Quaaludes he prescribed for her, the duty we here impose will have been fulfilled and thus he could not be held liable for Gooden's injuries.

We also point out that the imposition of a duty upon a physician for the benefit of the public is not a new concept. Art. 4445, §§ 1 & 4, Tex.Rev.Civ.Stat.Ann. (Vernon 1976) requires a physician who diagnoses or treats a case of syphilis, gonorrhea or chancroid to immediately report such case to the local health officer, who, upon receipt of such notice, "shall institute measures for

---

**3.** The liability we here impose is liability for "misfeasance" as opposed to "nonfeasance." Prosser, in *Handbook of the Law of Torts,* § 56, at 339–340 (4th ed. 1971) analyzes the distinction thus:

> In theory the difference between the two is simple and obvious; but in practice it is not always easy to draw the line and say whether conduct is active or passive. It is clear that it is not always a matter of action or inaction as to the particular act or omission which has caused the plaintiff's damage . . . . The question appears to be essentially one of whether the defendant has gone so far in what he has

actually done, and has got himself into such a relation with the plaintiff, that he has begun to affect the interests of the plaintiff adversely, as distinguished from merely failing to confer a benefit upon him. (Footnotes omitted.)

In the instant case the doctor had "gone so far" as to prescribe the drug for his patient, and in doing so had clearly "begun to affect the interests of the plaintiff adversely" as a member of the motoring public, by allowing his patient to leave without a warning of the possible adverse effects of the drug.

protection of other persons from infection." *Id.* This statute was originally enacted in 1918. Likewise, art. 4477–11, §§ 4, 4A and 5, Tex.Rev.Civ.Stat.Ann. (Vernon Supp. 1982) imposes an identical duty where a physician diagnoses or treats a case of tuberculosis. And, as stated in *McIntosh v. Milano, supra,* 403 A.2d at 515:

"Duty" is not a rigid formalism according to the standards of a simpler society, immune to the equally compelling needs of the present order; duty must of necessity adjust to the changing social relations and exigencies and man's relation to his fellow; and accordingly the standard of conduct, his care, commensurate with the reasonably foreseeable danger, such as would be reasonable in the light of the recognizable risk, for negligence is essentially "a matter of risk * * * that is to say, of recognizable danger of injury."

Or, as stated in *Prosser, Handbook of The Law of Torts,* § 53, at 325–327 (4th ed. 1971):

But it should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.

. . . .

... Within some such undefined general limits, it may be said that the courts have merely "reacted to the situation in the way in which the great mass of mankind customarily react," and that as our ideas of human relations change the law as to duties has changed with them. Various factors undoubtedly have been given conscious or unconscious weight, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, the moral blame attached to the wrongdoer, and many others. Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists. (Footnotes omitted.)

Finally, we address appellee's policy arguments against imposing such a duty on physicians. Dr. Tips argues that the Legislature, in enacting art. 4590i, Tex.Rev.Civ. Stat.Ann. (Vernon Supp.1982), intended to limit causes of action against physicians to "health care liability claims" involving injuries *to patients.* However, § 1.02(b)(7) of the Act states, in pertinent part:

(b) Because of the conditions stated in Subsection (a) of this section, it is the purpose of this Act to improve and modify the system by which health care liability claims are determined in order to:

\* \* \* \* \* \*

(7) make certain modifications to the liability laws *as they relate to health care liability claims only* and with an intention of the legislature *to not extend or apply such modifications of liability laws to any other area of the Texas legal system or tort law.* (Emphasis added.)

As stated in an earlier footnote to this opinion, the parties have conceded that, since the injury in this case was to one other than a patient, the case is not controlled by art. 4590i, *supra.* The above statement of legislative intent makes clear that cases such as this do not come under the provisions of this statute.

Appellee also argues that such a holding would force doctors to discontinue treating some of their patients, or to adopt ultraconservative treatment procedures, particularly in regard to prescribing drugs which can impair driving ability. We foresee no such "devastating" consequences. As the court pointed out in *Wharton Transport v. Bridges, supra,* 606 S.W.2d at 521, "We are not attempting to make the physician an insurer of highway safety...." And we have noted that the duty we here impose is not a duty to *control* the actions of the patient; rather, it is merely a duty to *warn* the patient of the fact that his driving ability may be impaired, and in what manner. And as stated in *McIntosh v. Milano, supra,* 403 A.2d at 515, in reference to the stricter duty to control a patient there imposed:

**372**

The possibility (or perhaps what could be called a threat) that in some case or cases in the future some therapists may choose not to accept some potential patients for therapy in their private practice (with obvious ramifications, and potential new causes of action) should not forever preclude victims of torts or crimes referable to the breach of duty of such therapists from being without any remedy whatsoever.

The trial court rendered summary judgment in favor of Dr. Tips on the ground that Dr. Tips owed no duty to the Goodens. We have held that a limited duty does exist, under the facts alleged in the Gooden's petition. The pleading, when liberally construed, is sufficient in law to state fact issues as to the appropriate standard of care to which Dr. Tips is to be held, whether he violated that standard of care in this instance, and whether such violation, if any be established, was a proximate cause of the Goodens' injuries. The summary judgment was thus improperly granted. *Holmes v. Canlen Management Corp., supra* at 201; *Gottleib v. Hofheinz, supra* at 10. The judgment below must therefore be reversed and remanded for determination of these fact questions by the appropriate trier of fact.

Judgment of the trial court is reversed and remanded.

COLLEY, Justice, concurring.

I concur in the result reached, but for different reasons. I would reverse the summary judgment rendered below because, assuming the truth of appellants' allegations set forth in their fourth amended original petition (quoted in the opinion), a cause of action was alleged against Dr. Tipps under existing common-law rules. I deem it unnecessary to adopt the so-called "limited duty to warn" rule created by the majority in this case.