**Raymond CASAREZ, Appellant,**

v.

**NME HOSPITALS, INC., d/b/a Sierra Medical Center, and Genaro Vasquez, M.D., Appellees.**

**No. 08–93–00182–CV.**

Court of Appeals of Texas, El Paso.

Aug. 18, 1994.

Rehearing Overruled Sept. 21, 1994.

Malcolm McGregor, John C. Schwambach, Jr., El Paso, for appellant.

Larry W. Hicks, Hadley A. Huchton, Hicks & Associates, Yvonne K. Puig, Kay C. Jenkins, Kemp, Smith, Duncan & Hammond, P.C., El Paso, for appellees.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

LARSEN, Justice.

Raymond Casarez, plaintiff, brought this suit against Genaro Vasquez, M.D., and NME Hospitals d/b/a Sierra Medical Center (Sierra or the hospital), alleging that their negligence proximately caused his contraction of the human immunodeficiency virus (HIV). Both defendants filed motions for summary judgment, on different grounds. The trial court granted summary judgment for both defendants, and plaintiff Casarez appeals. We affirm the summary judgment

as to Dr. Vasquez, but conclude that summary judgment should not have been granted the hospital on statute of limitations grounds. We therefore affirm in part and reverse and remand in part.

## FACTS

On March 27, 1989, Genaro Vasquez, a physician specializing in pulmonary disease, admitted a patient to Sierra Medical Center. The patient was terminally ill with acquired immune deficiency syndrome (AIDS). In his deposition testimony, Dr. Vasquez related his procedure upon admission of the AIDS patient as follows:

A: When I admitted him [the patient] to the hospital and I knew this diagnosis, as I told you, I communicated this to the people in the hospital by means of doing a history and physical and doing an admission instruction on the patient. In both of those I mentioned the admitting diagnosis, which was HIV positive reactive. I communicated to the nurses. And then from then on, they do whatever they need to do, as well as to all people.

Q: Now you're telling me that the hospital understood that this was an AIDS patient?

A: Yes, sir.

Q: And in your admitting diagnosis and your doctor's instructions, did you state what precautions should be taken with respect to the treatment of this patient?

A: I did not specifically state any precautions, because that was not what I was supposed to do. I am supposed to admit a patient with a diagnosis, make a diagnosis and treat that patient for that diagnosis. Whatever precautions are to be taken depends on what I establish as a diagnosis for that particular patient.

Similarly, in affidavit testimony, the doctor testified:

On March 27, 1989, I admitted an HIV positive patient to SIERRA MEDICAL CENTER. On March 28, 1989, I took the history of the patient and thus communicated his HIV positive status to the Quality Assurance Committee and Infectious Disease Control Committee of SIERRA MEDICAL CENTER. These committees are responsible for instituting isolation procedures for HIV positive patients. Once I communicated my patient's HIV status to SIERRA MEDICAL CENTER personnel, the hospital took steps to impose universal isolation. Universal precautions were being observed on March 30, 1989. This patient died at SIERRA MEDICAL CENTER on April 12, 1989.

.       .       .       .       .

According to the Guidelines for Prevention of Transmission of Human Immunodeficiency Virus and Hepatitis B Virus to Health–Care and Public Safety Workers, employers should establish a detailed work practices program that includes standard operating procedures for all activities having the potential for exposure; appropriate personal protective equipment should be made available routinely by the employer to reduce the risk of exposure.

The hospital posted a sign outside the AIDS patient's door informing all visitors and attendants they must speak with the charge nurse before entering the patient's room. The hospital provided gloves and masks, but no gowns or goggles, outside the room. It is undisputed that plaintiff and all the hospital workers knew that they were attending an AIDS patient.

The patient's family hired plaintiff Raymond Casarez, a certified nursing assistant, to provide additional care as a private duty nurse. Mr. Casarez was trained in treating patients with infectious diseases, including AIDS, had cared for other AIDS patients in the past, and knew how AIDS is transmitted. Casarez was educated in isolation techniques for preventing the spread of HIV and in deposition testified "[y]ou should know, if you're certified, how to take care of a patient, and you shouldn't have to be told about isolation." On April 11, 1989, the patient received respiratory treatment which irritated a sore on his mouth. Mr. Casarez, as part of his job duties, was swabbing the sore when the patient involuntarily spewed blood and

mucus over Casarez's mouth, eyes, and arm. The patient died the next day.

Casarez was tested for HIV on May 8, 1989 because he feared exposure to the virus from the dying patient's body fluids. He received test results showing he was HIV positive on June 19, 1989.[1] He filed this suit against Dr. Vasquez and Sierra Medical Center on June 18, 1991.

## SUMMARY JUDGMENT FOR DR. VASQUEZ

Mr. Casarez's lawsuit alleged that Dr. Vasquez negligently caused Mr. Casarez's exposure to HIV in the following ways:

(1) In failing to order universal precautions before the incident;

(2) In failing to warn the plaintiff and others of the dangerous condition of the AIDS patient and the dangers of working with an AIDS patient when not properly protected;

(3) In failing to comply with OSHA and other governmental regulations relating to the care of AIDS patients;

(4) In failing to include in his chart adequate orders for the protection of the health care workers attending [the patient];

(5) In failing to make an appropriate clinical assessment of the progression of the disease and symptomatology in his patient and resulting determination of the need for isolation, barrier protections, universal precautions, etc., sufficient to protect Plaintiff and anyone else who might reasonably foreseeably come into contact with that patient.

Plaintiff ascribes to Dr. Vasquez the "duty to take whatever steps are reasonable under the circumstances to reduce the likelihood of injury to third parties who may be injured by that patient." We formulate the question presented by Dr. Vasquez here as follows: what duty does a physician owe the hospital, health care workers, visitors, and third parties to insure that a hospital in-patient with

an infectious disease does not transmit the disease to others?

■ The question of whether a legal duty exists under any particular set of facts is one of law. *Gooden v. Tips*, 651 S.W.2d 364, 366 (Tex.App.—Tyler 1983, no writ); *Producers Grain Corp. v. Lindsay*, 603 S.W.2d 326, 329 (Tex.Civ.App.—Amarillo 1980, no writ). In asserting that Dr. Vasquez breached a duty to him, Mr. Casarez relies chiefly upon two cases; we do not read either as imposing a duty upon the doctor under the facts here.

Plaintiff relies first upon *Gooden v. Tips*. There plaintiff was struck by an automobile driven by Dr. Tips' patient, who was under the influence of prescription quaaludes at the time of the accident. Gooden urged that the doctor negligently breached his duty to use reasonable care to protect the driving public where the physician's negligence in diagnosis or treatment of his patient contributed to the plaintiff's injuries. The Tyler Court held that there was a fact issue as to whether Dr. Tips' failure to warn his patient not to drive while taking quaaludes proximately resulted in a third party's injuries. Dr. Tips' summary judgment in that case was based solely on the lack of a physician-patient relationship between himself and the injured person. There is no question that Mr. Casarez's claims are not founded on any physician-patient relationship, but we believe the case may be distinguished on another ground.

■ In *Gooden* the Court found the harm, an automobile accident, was:

[A] reasonably foreseeable consequence of the physician's failure to warn his patient not to drive. There [in other cases discussed], as here, the physicians knew, or in the exercise of ordinary care should have known, that their patient's condition ... could seriously impair the patient's ability to drive a motor vehicle. *Gooden*, 651 S.W.2d at 369–70.

In contrast, the summary judgment evidence in this case established that Mr. Casarez was

1. For purposes of this appeal from a summary judgment, we assume that Mr. Casarez contracted HIV from his infected patient in the manner he describes, and that his positive HIV test reflected his infection by that patient. As in all summary judgment cases, we assume all contested facts in favor of the nonmovant, and make all possible inferences in his favor. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 549 (Tex.1985).

well aware of the methods by which HIV could be transmitted, and also was well-versed in isolation techniques when treating AIDS patients. Moreover, the hospital retained control over protocols within its walls, and it possessed the duty to warn third persons of the dangers involved in treating and visiting its patients. The harm to Casarez, therefore, was not a reasonably foreseeable consequence of the physician's failure to order a health care professional, not in the doctor's employ, to use precautions of which he was already well aware.

The second case relied upon by plaintiff is *W.C.W. v. Bird,* 840 S.W.2d 50 (Tex.App.— Houston [1st Dist.] 1992, writ granted), reversed by the Texas Supreme Court in *Bird v. W.C.W.,* 868 S.W.2d 767 (Tex.1994). That case involved a parent who sued his daughter's psychiatrist for negligently misdiagnosing her as a victim of sexual abuse. The Supreme Court there held that "a mental health professional owes no professional duty of care to a third party to not negligently misdiagnose a condition of a patient." *Bird,* 868 S.W.2d at 772. Thus, the case no longer supports plaintiff's theory of recovery against Dr. Vasquez.

■ Although we agree that the doctor did have a duty to insure that the hospital and health care workers within the hospital knew they were treating an AIDS patient, we find that he established as a matter of law his full compliance with that duty. Because the protocol for dealing with AIDS patients was well known by 1989, and it is undisputed that Mr. Casarez was fully aware that he was treating an AIDS patient and knew of the precautions necessary to prevent infection at the time of his alleged exposure, we conclude that Dr. Vasquez had no further duty to order specific precautions against exposure to HIV.[2] No Texas law imposes upon physicians a duty to order nurses and other hospital workers to use well-known precautions in treating a patient whose condition the doctor has fully disclosed to the proper hospital authorities. We conclude that Dr. Vasquez

complied with his duty to Mr. Casarez by notifying the hospital's infectious disease control committee and quality assurance committee of his patient's AIDS infection. Once he had notified the committees, the doctor had a right to rely upon the hospital to institute appropriate isolation procedures and warnings for persons attending and visiting the patient. The trial court properly entered summary judgment in favor of Dr. Vasquez.

### SUMMARY JUDGMENT FOR THE HOSPITAL

■ The hospital moved for summary judgment only on the ground that the two-year statute of limitations had run; it acknowledges on appeal that the applicable statute of limitations here is that found at TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). Suit was filed more than two years after Mr. Casarez's alleged exposure to HIV, but less than two years after he learned of his positive test results. The hospital urged that Mr. Casarez was aware of the way HIV is transmitted, that he knew there was a possibility he had been exposed to the virus on April 11, 1989, and that he possessed sufficient facts on that date to trigger the running of the statute of limitations on that date. The discovery rule, it argues, cannot apply in this case because Mr. Casarez had sufficient facts to apprise him of his cause of action on the day it arose. We disagree.

■ The general rule applying to statutes of limitations is that a cause of action accrues when a wrongful act effects an injury, regardless of when the plaintiff learns of that injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). The discovery rule exception applies, however, where plaintiff possesses an inherently undiscoverable cause of action, which is not considered to accrue until plaintiff discovers or through the exercise of reasonable care and diligence should discover the nature of an injury. *Moreno,* 787 S.W.2d at 351; *Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex.1977). The discovery rule applies in cases involving negligent-

---

2. We express no opinion, however, as to the duty a physician might have in admitting a patient with a rare disease, the protocols for treating which might be little-known to treating nurses

and other health care workers. It is logical that the doctor's duty under such circumstances would include more specific orders and instructions.

ly-inflicted disease where a plaintiff did not and could not know the nature of an injury at the time a cause of action accrued. Negligent HIV transmission is one such inherently undiscoverable cause of action subject to the discovery rule. *J.K. and Susie L. Wadley Research Institute and Blood Bank v. Beeson*, 835 S.W.2d 689, 694 (Tex.App.—Dallas 1992, writ denied).[3]

Defendant hospital argues that because Mr. Casarez was well aware of the way HIV is transmitted, knew that his patient had AIDS, and indeed suspected he had been exposed to the virus at the instant of his exposure, the discovery rule should not apply here. The statute should not be tolled until plaintiff learned he was HIV positive, Sierra claims, because this would lead to situations where someone suspecting exposure to the virus could prolong their ability to file suit for years by never being tested and thus postponing confirmation of exposure to the virus. The hospital further urges that, even before plaintiff learned he had contracted the virus (and even if he had been exposed to HIV but did not contract it) he had a cause of action and damages for which he could have sued. Thus, Sierra claims, the date upon which a plaintiff discovers HIV positive status should not control. We disagree. We believe that the means of contracting HIV, the testing procedures, and widely varying incubation periods during which no symptoms exist, all require that we formulate a discovery rule in HIV cases different from that urged by the hospital.

Although HIV has probably been in existence for a hundred years or longer, AIDS was first diagnosed in Los Angeles in 1981. Alexandra M. Levine, *Acquired Immunodeficiency Syndrome: The Facts*, 65 S.Cal. L.Rev. 423, 427 (1991).[4] The cause of the disease, not ascertained until 1983, is the HIV retrovirus which attaches to certain white blood cells normally responsible for the body's immune functions. *Id.* The virus then multiplies, impairing the immune system, allowing other infections to occur, and eventually killing the infected human host. Notes, *Standards of Conduct, Multiple Defendants, and Full Recovery of Damages in Tort Liability for the Transmission of Human Immunodeficiency Virus*, 18 Hofstra L.Rev. 37, 44 (1989). HIV is transmitted through direct blood-to-blood or sexual contact with an infected person. Levine, *Acquired Immunodeficiency Syndrome: The Facts*, 65 S.Cal.L.Rev. at 437. After infection, HIV can remain undetectable in the body for over a year; blood tests to determine the presence of HIV are considered certain only fourteen months after exposure. John Patrick Darby, *Tort Liability for the Transmission of the AIDS Virus: Damages for Fear of AIDS and Prospective AIDS*, 45 Wash. & Lee L.Rev. 185, 197 n. 60 (1988), citing E. Fineberg, *AIDS Impact on Public Policy* 19 (1986). Thus, a person infected with the virus may still test negative for over a year after exposure. Moreover, persons infected with HIV can remain asymptomatic for months or years. *Id.* at 186. The virus may remain latent for seven years, considered by some experts to be a normal incubation period, but some believe certain individuals may remain asymptomatic for as long as fourteen years. *Id.* It is undisputed that these latent periods vary widely.

Given these facts, we disagree with the hospital's position that the discovery rule does not apply where a person suspects HIV infection as soon as exposure occurs. Particularly because individuals cannot know for certain they have the virus until they test positive, the discovery rule seems especially applicable.

■ We conclude the sounder rule is to apply the traditional discovery rule in HIV cases even where the plaintiff suspects exposure immediately. The statute of limitations begins to run when an individual knows, or through the exercise of reasonable care and

---

3. Probably the most analogous use of the discovery rule in other slow-onset disease cases are claims for wrongful exposure to substances causing asbestosis and silicosis. See, e.g., *Srite v. Owens–Illinois, Inc.*, 870 S.W.2d 556 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Martinez v. Humble Sand & Gravel, Inc.*, 860 S.W.2d 467 (Tex.App.—El Paso 1993), rev'd on other grounds, 875 S.W.2d 311 (Tex.1994).

4. For a complete history of the AIDS pandemic see Randy Shilts, *And the Band Played On: Politics, People, and the Aids Epidemic* (1987).

diligence should know, that he or she has contracted the virus.[5] See *Beeson*, 835 S.W.2d at 695. A person cannot know with certainty of the infection until he or she tests positive for the virus; if he or she suspects exposure, however, it would not be reasonable to put off ascertaining it until symptoms develop.[6] Thus, we believe the hospital's concern that persons would deliberately delay testing for the virus is addressed by the formulation of the rule itself. We have considered, and conclude we must reject, the hospital's argument that Mr. Casarez could have brought suit any time after his exposure to the virus, even before he knew he had tested HIV positive. Although plaintiffs may indeed possess a cause of action for damages resulting from the fear and anguish caused by exposure to HIV, even where they do not ultimately contract the disease, see, Darby, *Tort Liability for the Transmission of the AIDS Virus*, 45 WASH. & LEE L.REV. at 199–201 (1988), the damages in such a case would be different, and far less serious, than those associated with actually contracting the virus with its inevitable death sentence. Here, Mr. Casarez alleges that Sierra's negligence proximately caused his *contraction* of HIV. The damages he seeks are past mental anguish, cost of medical care, and future mental anguish. Although his petition does not specify, his damages for past mental anguish must be restricted to the time after he learned he had contracted the virus, as he cannot invoke the discovery rule to cover any damages sustained between the time of his alleged exposure and his learning of HIV positive status. That he cannot recover damages that do not result from his contraction of the virus, however, does not preclude him from invoking the discovery rule for damages from contracting the virus.

We concomitantly conclude that should we refuse to allow the discovery question to reach a jury here, we would in effect be encouraging lawsuits based upon the unconfirmed fear of HIV exposure, many of which would probably never be filed if exposed individuals knew they would not jeopardize their claims by waiting to learn whether they had actually contracted the virus.[7] Few people are likely to bring suit for the mere suspicion of HIV exposure unless the law requires them to do so; to hold that the discovery rule does not apply would encourage litigation based upon fear of AIDS, even where such fear ultimately proves unfounded. This, we believe, would be bad policy. The lag time between exposure to the virus and a positive test result, which in some cases may be almost as long as the limitations period itself, exacerbates this problem, and employing the discovery rule diminishes it.

For these reasons, then, we believe that Mr. Casarez has raised a genuine issue of material fact as to when he discovered, or through the exercise of reasonable care and diligence should have discovered, that he had contracted HIV. See generally, *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515,

5. This holding comports with the conclusions of courts in other jurisdictions. *Murray v. Hamot Medical Center of the City of Erie*, 429 Pa.Super. 625, 633 A.2d 196, 201 (1993); *Doe v. American National Red Cross*, 176 Wisc.2d 610, 500 N.W.2d 264, 265 (1993); *Sweeney v. Presbyterian/Columbia Presbyterian Medical Center*, 763 F.Supp. 50, 53 (S.D.N.Y.1991); *DiMarco v. Hudson Valley Blood Services*, 147 A.D.2d 156, 542 N.Y.S.2d 521, 524 (N.Y.App.Div.1989); *Prego v. City of New York*, 147 A.D.2d 165, 541 N.Y.S.2d 995, 1003 (N.Y.App.Div.1989).

6. On the other hand, there are circumstances in which plaintiffs have been wholly unaware of HIV exposure and had no reason to suspect it until they developed AIDS. There, the courts have upheld a tolling of limitations until the onset of symptoms led to the HIV diagnosis. *Beeson*, 835 S.W.2d at 695.

7. One law review article discusses the various damage elements for HIV infection in some detail. See John Patrick Darby, *Tort Liability for the Transmission of the AIDS Virus: Damages for Fear of AIDS and Prospective AIDS*, 45 WASH. & LEE L.REV. 185, 192–93 (1988). The author acknowledges that the fear of contracting the disease is a real and present injury, even where the disease never develops:

> Just as a reasonable and genuine fear of cancer constitutes a present injury, a reasonable and genuine fear of AIDS is a present injury, even though development of AIDS is speculative. To collect damages for fear of AIDS ... an HIV carrier must prove that his fear of AIDS is genuine and reasonable. Because the risk of developing AIDS from an HIV infection is substantial, an HIV carrier will have little difficulty proving that his fear of AIDS is genuine and reasonable. *Id.* at 192–93. [Footnotes omitted].

517 (Tex.1988); *Weaver*, 561 S.W.2d at 793. We hold that his suspicion that he might have contracted the virus from the AIDS patient goes to evidence of his care and diligence in being promptly tested for HIV, but does not preclude his reliance on the discovery rule as a matter of law. Summary judgment in favor of the hospital on limitations grounds was, therefore, improper.

### CONCLUSION

We affirm the trial court's summary judgment in favor of Genaro Vasquez, M.D. We reverse the trial court's summary judgment in favor of NME Hospitals d/b/a Sierra Medical Center and remand for further proceedings in accordance with this opinion.

KOEHLER, Justice, concurring and dissenting.

I concur with the affirmance of the summary judgment granted to Genaro Vasquez, M.D. for the reasons stated in the majority opinion. However, I must respectfully dissent from that portion of the majority opinion which reverses the summary judgment which had been granted to the NME Hospitals, Inc. on statute of limitations grounds and remands the cause of action Raymond Casarez has alleged against the hospital for further proceedings.

The majority has arrived at its conclusion that the statute of limitations discovery rule should be applied to all cases involving claims of negligent infliction of the HIV virus, reasoning that persons infected with the virus may test negative for over a year after exposure and may remain asymptomatic of the disease for months or years. I have no quarrel with the application of the discovery rule in the typical AIDS/HIV case where the exposure to the disease is unsuspected as in the blood transfusion cases. But all AIDS/

HIV cases are not created equal and this case proves the point, that each case should be considered on its own fact situation and merits rather than have the discovery rule applied willy-nilly to all such cases.

Without unnecessarily repeating the facts so ably set forth in the majority opinion, it is well to emphasize that Casarez, the plaintiff, is a male nursing assistant, very familiar both by profession and by life-style with the dangers of AIDS transmission from patient to care-giver and with the proper isolation procedures to prevent such transmissions, including the wearing of mask and gloves. Casarez was employed through his employment agency, Medical Personnel Pool, by the patient's family to provide additional care and knew that his patient was dying from the effects of the AIDS virus. He was initially instructed by Carmen Sanchez of his agency that the only protective clothing he was to wear were gloves so that some members of the patient's family ignorant of his diagnosis would not know he was dying of AIDS. He was experienced in caring for terminally ill AIDS patients. Obviously he was aware of the possible dangers of contracting AIDS when on April 11, 1989 his patient spewed blood and mucous onto his face, mouth, and arm. Casarez was well-aware prior to the injury of what he has alleged to be the negligent acts and omissions of the hospital.[1] He was concerned enough about the danger of contracting the virus that he went in for testing less than thirty days later (May 8). He learned that the test results showed him to be HIV positive on June 19, 1989. Thus, he had in almost twenty-two months in which to file suit before the standard two-year statute of limitations would have run.

Because Casarez himself was not a patient, this is an ordinary negligence cause of action

1. In his first amended petition, Casarez alleged that his damages were proximately caused by the hospital's following acts and omissions:

    (1) In failing to provide the Plaintiff and other co-workers with protective gowning and a proper place to dispose of said gowning;
    (2) In failing to provide the Plaintiff and co-workers of the Plaintiff with goggles and other protective eyewear and facewear while caring for an AIDS patient;

    (3) In failing to warn the Plaintiff and others of the dangerous condition of the AIDS patient and the dangers of working with an AIDS patient when not properly protected;
    (4) In failing to comply with OSHA and other governmental regulations relating to the care of AIDS patients;
    (5) In not following universal precautions in the care and treatment of the AIDS patient; and
    (6) In not providing Plaintiff a safe workplace.

for personal injuries, not a medical malpractice case subject to the provisions of the Medical Liability and Insurance Improvement Act, TEX.REV.CIV.STAT.ANN. art. 4590i (Vernon Pamphlet 1994). An action for personal injuries must be brought not later than two years after the cause of action accrues. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986). Generally, a cause of action accrues when facts come into existence which authorize a claimant to file suit, that is when a wrongful act effects an injury, regardless of when the claimant learned of the injury. *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977); *J.K. and Susie L. Wadley Research Institute and Blood Bank v. Beeson*, 835 S.W.2d 689, 693 (Tex.App.—Dallas 1992, writ denied). In order to avoid the unjust result where limitations would run before a patient was aware that a negligent act or omission had caused an injury, the Supreme Court created the "discovery rule" as an exception to the general rule to be applied in medical malpractice, and a limited number of other, situations. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). Under the discovery rule, a cause of action does not accrue until a patient discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injuries. *Moreno*, 787 S.W.2d at 351; *Riojas v. Phillips Properties, Inc.*, 828 S.W.2d 18, 21 (Tex. App.—Corpus Christi 1991, writ denied). It is only to those causes of action that can be characterized as inherently undiscoverable that the discovery rule applies. *American Centennial Ins., Co. v. Canal Ins., Co.*, 810 S.W.2d 246, 255 (Tex.App.—Houston [1st Dist.] 1991), aff'd in part, rev'd in part on other grounds, 843 S.W.2d 480 (Tex.1992). Although AIDS has been termed "an inherently undiscoverable disease because of its long latency period." *Beeson*, 835 S.W.2d at 694. Casarez found out that he was infected with the HIV virus in little more than two months from the date of the injury.

Unlike the blood transfusion cases, such as *Beeson* and the others cited in the majority opinion, where the plaintiff did not know, and in the exercise of ordinary care and diligence, could not have known of the negligent act or omission until the HIV symptoms had developed, Casarez was very aware of the dangers of not wearing protective equipment and knew as well, at the time, of the occurrence of the hospital's alleged negligent acts and omissions as he did after he got the results of the test. Although he may not have chosen to file suit over the mere traumatic event of having been spewed upon with the blood and bodily fluids of an AIDS patient, Casarez knew very well of the dangers that such an event posed and of the likelihood, more than a remote possibility, that he could be infected with the HIV virus.

Just because the HIV virus is involved (keeping in mind that this is not a medical malpractice case), Casarez should not be put in a better position than would any ordinary accident-victim who did not discover, and could not have discovered in the exercise of ordinary care, an injury until after the two-year statute had run.

I would affirm the summary judgment granted in favor of the hospital as well as the summary judgment granted in favor of the doctor under the facts of this case.