**Linda Balderas GARCIA, Appellant,**

v.

**SANTA ROSA HEALTH CARE CORPORATION, Appellee.**

No. 13–94–482–CV.

Court of Appeals of Texas,
Corpus Christi.

June 20, 1996.

Rehearing Overruled Aug. 1, 1996.

---

George P. Powell, Hinojosa & Powell, Richard L. Salinas, McAllen, for appellant.

William J. Baine, Cathy J. Sheehan, Plunkett, Gibson & Allen, San Antonio, for appellee.

Before YAÑEZ, CHAVEZ and RODRIGUEZ, JJ.

## OPINION ON MOTION
## FOR REHEARING

YAÑEZ, Justice.

A panel of this Court issued the original opinion in this case on February 29, 1996. Appellee has filed a motion for rehearing and motion for rehearing en banc. The panel now withdraws its original opinion and substitutes the following as the opinion of the panel.

Linda Balderas Garcia appeals from a final summary judgment denying her claim against Santa Rosa Health Care Corporation for negligently failing to notify her that her former husband, Adalberto Balderas, probably had AIDS. Santa Rosa moved for summary judgment on the ground that it owed no duty to inform Garcia of Balderas' probable exposure to AIDS and that the statute of limitations barred her claim. The trial court granted summary judgment by a general order, from which Garcia brings the present appeal claiming by three points of error that summary judgment was improper. We reverse and remand.

According to the plaintiffs' petition, Balderas was a hemophiliac who had been infected with the AIDS virus in 1980, allegedly from blood products supplied by Santa Rosa and injected into Balderas to help his blood to clot. There is no allegation of negligence or liability on the part of Santa Rosa for its initial transmission of AIDS to Balderas. However, as knowledge of AIDS increased, Santa Rosa became aware in the mid–1980s that its blood products had been infected with the virus and that Balderas was probably infected. Santa Rosa scheduled Balderas for yearly physical examinations, but allegedly never notified him that he might be infected with the HIV virus. Balderas did not keep his yearly appointments, and thus did not learn of his infection with AIDS until he became ill and was tested in December 1989. In the meantime, Balderas and Garcia had met in 1987 and were married on March 12, 1988.

Balderas and Garcia filed the present lawsuit against Santa Rosa on May 21, 1991, alleging causes of action for both negligent failure to notify and for intentional infliction of emotional distress. Plaintiffs alleged that, had Balderas sought medical treatment at the time that Santa Rosa became aware of his potential infection with AIDS, he could have extended his life. In addition, Garcia alleged her own possible infection with AIDS and the resulting emotional distress at having placed herself at risk for contracting AIDS during the year that she lived with Balderas prior to learning of his infection.

Santa Rosa moved for summary judgment on the grounds that it breached no duty to notify the plaintiffs of Balderas' possible exposure to AIDS, that the plaintiffs' claims are barred by the limitations provisions of the Medical Liability and Insurance Improvement Act, Tex.Rev.Civ. Stat. Ann. art. 4590i § 10.01 (Vernon Pamph.1996), and finally that it negated as a matter of law the first two elements of a claim for intentional infliction of emotional distress.

Plaintiffs filed a response to defendant's motion for summary judgment, claiming among other things that their causes of action are based on negligence rather than medical malpractice and that a fact issue exists regarding the attempts to notify, and that the relevant limitations period did not begin to run until plaintiffs discovered Balderas' exposure to AIDS in December 1989.

The trial court granted a final summary judgment against Linda Garcia on all of her

claims against Santa Rosa, from which she has perfected the present appeal.[1]

By her first and third points of error, Garcia contends generally that Santa Rosa had a duty to notify her that Balderas was probably infected with the AIDS virus, and that her cause of action is based on negligence rather than medical malpractice. Garcia asserts that a fact issue exists as to whether Santa Rosa provided reasonable notification.

We first determine whether a duty exists on the part of a health-care provider or supplier of products to notify a third party that he or she may have been exposed to HIV through someone the health care professional suspects of having AIDS as a result of the professional's services or products.

Santa Rosa contends that no underlying duty arose for it to notify Garcia concerning Balderas' probable infection with AIDS. In addition, Santa Rosa generally raises the physician-patient privilege and the provisions of the Communicable Disease Prevention and Control Act as a bar to any such notification directly to Garcia.

■ The Communicable Disease Prevention and Control Act generally prohibits the release or disclosure of a "test result" indicating that a particular person is positive, negative, or at risk for AIDS or HIV infection. *See* Tex. Health & Safety Code § 81.103 (Vernon 1992) (formerly Tex.Rev. Civ. Stat. Ann. art. 4419b–1 § 9.04 (Vernon 1987)). A person being tested for AIDS entrusts personal information to a physician or health care professional over which he has a right to be protected from unauthorized disclosures.

■ In the present case, however, Santa Rosa's information indicating that Balderas was probably infected with AIDS was derived not from any physician-patient relationship or the "testing" of Balderas for AIDS, but from other situational conditions (i.e., the condition of their blood supply generally at the time the product was given to Balderas) which put Balderas at great risk for developing AIDS. Environmental and situational factors such as these are not covered by the statute and do not carry the same guarantee of confidentiality as formal testing. Accordingly, we hold that the Communicable Disease Prevention and Control Act would not bar the present lawsuit for failure to disclose non-confidential information of this nature that may be necessary to protect a third party from exposure to AIDS.[2] We now turn to the underlying question of whether Texas law recognizes a duty of this nature.

■ Liability in negligence is premised on the finding of a duty, a breach of that duty which proximately causes injuries, and damages resulting from that breach. *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). Whether a legal duty exists under a set of facts is a question of law, and in determining whether to impose a duty, the court must consider the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the actor. *Bird,* 868 S.W.2d at 769; *Phillips,* 801 S.W.2d at 525; *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983).

■ Under certain circumstances, the common law recognizes the duty to take af-

---

**1.** After filing the present lawsuit, Balderas and Garcia later divorced, and Balderas died in 1993. Balderas' mother, as personal representative of his estate, then voluntarily dismissed the claims made on his behalf, leaving only the claims of Linda Garcia against Santa Rosa. In addition, Santa Rosa has obtained summary judgment on Garcia's claims for intentional infliction of emotional distress that are not challenged on appeal, thus leaving only Garcia's claim for negligent failure to notify.

**2.** Certainly, a person knowledgeable about the risk factors in the spreading of AIDS should be able to give common-sense advice about the matter. If, for example, a nurse becomes aware that one of her friends is about to become intimate with someone who is generally at risk for AIDS (e.g., an IV drug user, a homosexual, or a hemophiliac) she should be allowed to pass on to her friend her concerns about the dangers to which the friend may be exposing herself, without the nurse fearing criminal prosecution for making a statement that the potential partner is "at risk" for having AIDS.

firmative action to control or avoid increasing the danger from another's conduct which the actor has at least partially created. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 312 (Tex.1987).

For instance, in *Gooden v. Tips,* 651 S.W.2d 364 (Tex.App.—Tyler 1983, no writ), while driving under the influence of Quaaludes that Dr. Tips had prescribed for her, Dr. Tips' patient lost control of her car and caused a traffic accident in which Gooden was injured. The Tyler Court recognized a physician's duty to the motoring public to warn his patient of the side effects of a drug prescribed for her. *Id.* at 369 (cited with approval in *El Chico,* 732 S.W.2d at 312); *see also Helms v. Gonzalez,* 885 S.W.2d 535, 537 (Tex.App.—Eastland 1994, no writ); *Flynn v. Houston Emergicare, Inc.,* 869 S.W.2d 403 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

Unlike *Gooden,* the plaintiff in the present case would extend the duty of protection to include a duty to directly warn foreseeable third parties, not just the patient himself, of the threatening condition. We find some suggestion in Texas law that a treating physician owes a duty to sufficiently protect those hospital workers who may be exposed to an infectious disease carried by his patient while that patient is in the hospital. *See Casarez v. NME Hospitals, Inc.,* 883 S.W.2d 360, 364 (Tex.App.—El Paso 1994, writ ·dism'd by agr.) (treating physician has a duty to inform his fellow health-care workers within the hospital that they are treating an AIDS patient). However, this duty to warn third parties has not been sufficiently defined by Texas courts.

▪ Nevertheless, in determining whether a legal duty exists, Texas courts take into account not only the law and policies of this State, but also the law of other states and the United States, and the views of respected and authoritative restatements and commentators. *Smithkline Beecham Corp. v. Doe,* 903 S.W.2d 347, 351 (Tex.1995).

▪ The California Supreme Court has pioneered the tort duty owed by a therapist to those who may be at risk from the violent behavior of the therapist's patient. In *Tara-*

*soff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), the court held that, when a therapist reasonably believes that his patient poses a serious danger of violence to a specific, readily identifiable person, the therapist bears a duty to exercise reasonable care to protect that person. In *Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980), however, the court rejected any duty to warn the general public and reiterated that the *Tarasoff* duty is limited to a foreseeable and readily identifiable potential victim. Following the rationale of *Tarasoff* and *Thompson,* though not specifically adopting such a tort duty under Texas law, the El Paso Court of Appeals has likewise been unwilling to impose a blanket liability upon all hospitals and therapists for the unpredictable conduct of their patients absent a specific threat to an identifiable individual. *Williams v. Sun Valley Hospital,* 723 S.W.2d 783, 785–87 (Tex.App.—El Paso 1987, writ ref'd n.r.e.).

The duty asserted in the present case by Garcia is similar to the *Tarasoff* duty and an extension thereof to the extent that it would require a health care professional to protect or warn third parties about the dangers that an infected person poses to them as a result of his medical condition. The California Court of Appeals has recognized just such a duty to warn concerning the AIDS virus that a patient may pass to his or her sexual partners. *Reisner v. Regents of the University of California,* 31 Cal.App.4th 1195, 37 Cal.Rptr.2d 518 (1995).

We conclude that, consistent with the *Gooden* line of cases in Texas and the *Tarasoff* line in California, health-care professionals who discover some disease or medical condition which their services or products have likely caused to a particular recipient and which may endanger a readily identifiable third party, owe a duty to reasonably warn the third party to the extent that such warning may be given without violating any duty of confidentiality to the recipient of services or products.

▪ In the present case, Santa Rosa's blood products allegedly infected Balderas with the AIDS virus at a time when the

danger was still generally unknown. Once Santa Rosa learned that its blood was infected with AIDS and that Balderas was probably infected, it also became aware of the risk of Balderas spreading this disease to others with whom he may be having intimate contact. The risk, foreseeability, and likelihood of injury to these persons from the spread of Balderas' infection clearly justify placing some burden on Santa Rosa both to reasonably inform Balderas of his probable infection with AIDS and to reasonably notify, within the bounds of the law, those with whom he may have had intimate contact or otherwise spread the virus.

Having found that a duty exists in the present case, we now turn to the summary judgment evidence submitted to show that Santa Rosa complied with that duty.

■■■■ The standard of review for summary judgment demands that we accept the truth of all evidence favorable to Garcia and indulge every reasonable inference on her behalf. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Celestino v. Mid–American Indem. Ins. Co.,* 883 S.W.2d 310, 312 (Tex.App.—Corpus Christi 1994, writ denied). An appellant may obtain summary judgment by negating an essential element of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). The standard of review is whether the summary judgment proof establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972).

■■■■ The plaintiffs and Santa Rosa offered conflicting summary judgment evidence concerning the notice that was given to Balderas and Garcia of his possible exposure to the AIDS virus and of the need for AIDS testing. Santa Rosa offered affidavits to show that, starting on February 11, 1987, it had sent yearly letters to Balderas' mailing address, his mother's residence, scheduling him for annual evaluation and notifying him

that his blood would be tested for exposure to the AIDS virus.

■■■■ However, the plaintiffs offered in response the deposition excerpts of Balderas to the effect that he never received the letters that Santa Rosa supposedly sent and that he was never notified by Santa Rosa of his possible exposure to the AIDS virus. Balderas contends that Santa Rosa had telephoned his mother to schedule his yearly checkups, but said nothing about his exposure to the AIDS virus. Balderas was not able to make those appointments for the years 1983 through 1988 because of job conflicts, but he contends that he would have made his appointments if he had known that he would be tested for AIDS. In addition, the plaintiffs offered the deposition excerpts of Linda Garcia to the effect that her only contact with Santa Rosa before Balderas was diagnosed with HIV was a telephone conversation in which she happened to have answered the telephone when Santa Rosa had called Balderas to come in for his yearly checkup. Garcia claims that someone from Santa Rosa had asked her to come along so that they could meet her before she and Balderas got married. However, the representative from Santa Rosa never mentioned that Balderas was probably infected with the AIDS virus. Garcia further stated that she had tested negative for HIV in January and August of 1990, but has not gone back for two more recommended tests for fear of being diagnosed as positive.[3]

Accordingly, the summary judgment evidence shows a fact issue as to whether Santa Rosa did in fact sufficiently notify Balderas and Garcia of his probable infection with the AIDS virus. Even after Santa Rosa became aware that Balderas and Garcia were planning to marry and that Garcia was at risk of being exposed to the AIDS virus, it made no effort to notify her directly, or indirectly by notifying Balderas, of his probable infection with AIDS. We sustain Garcia's first and third points of error.

---

**3.** We note that an exposed party may possess a cause of action for damages resulting from the fear and anguish caused by exposure to HIV, even where he does not ultimately contract the

disease. *See Casarez,* 883 S.W.2d at 366 (citing Darby, *Tort Liability for the Transmission of the AIDS Virus,* 45 Wash. & Lee L.Rev. 185, 199–201 (1988)).

Garcia contends by her second point of error that her cause of action is not barred by the statute of limitations.

 Santa Rosa raised as an affirmative defense, and as a ground in its motion for summary judgment, that Garcia's claims were barred by the limitations provisions of article 4590i, § 10.01, which require a health care liability claim to be filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or hospitalization for which the claim is made is completed. The two-year limitations period in article 4590i, § 10.01 is generally absolute and not subject to the discovery rule. *See Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985).

 However, the limitations period placed on a medical malpractice cause of action under the Medical Liability and Insurance Improvement Act applies only to patients; it does not apply where no physician-patient relationship exists between plaintiff and defendant. *Helms,* 885 S.W.2d at 537; *see also Flynn,* 869 S.W.2d at 405. Accordingly, a lawsuit filed by a non-patient against a physician for failure to protect him from exposure to a disease carried by the physician's patient is governed by the statute of limitations found at Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp.1996). *See Casarez,* 883 S.W.2d at 364.

 A cause of action generally accrues when a wrongful act effects an injury, regardless of when the plaintiff learns of that injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). The discovery rule exception applies, however, where the plaintiff possesses an inherently undiscoverable cause of action, which is not considered to accrue until the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of an injury. *Moreno,* 787 S.W.2d at 351; *Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex.1977).

 The discovery rule applies in cases involving negligently-inflicted disease where a plaintiff did not and could not know the nature of an injury at the time a cause of action accrued. Specifically, negligent transmission of the AIDS virus has been held to be an inherently undiscoverable cause of action subject to the discovery rule. *Casarez,* 883 S.W.2d at 364–65; *J.K. and Susie L. Wadley Research Institute and Blood Bank v. Beeson,* 835 S.W.2d 689, 694 (Tex.App.—Dallas 1992, writ denied).

In the present case, Garcia first learned that Balderas had AIDS in December 1989, within two years of the time that she filed the present lawsuit against Santa Rosa. Accordingly, the trial court erred if it granted summary judgment on the ground that her cause of action was barred by limitations. We sustain Garcia's second point of error.

We REVERSE the summary judgment rendered by the trial court on Garcia's claim for negligent failure to notify and REMAND this case for trial of that claim. The remainder of the summary judgment concerning Garcia's claim for intentional infliction of emotional distress is AFFIRMED.

Appellee's motion for rehearing en banc is denied.