Joseph HAUSSECKER, and Gail Haussecker, Appellants,

v.

Jerry P. CHILDS and Childs & Bishop, Inc., Appellees.

Court of Appeals of Texas, El Paso.

Nov. 21, 1996.

Rehearing Overruled Jan. 22, 1997.

Robert Gordon Taylor, George E. Cire, Cletus P. Ernster, III, Taylor & Cire, Houston, for appellants.

Charles T. Frazier, Gregory J. Lensing, Cowles & Thompson, P.C., Dallas, for appellees.

Before LARSEN, McCLURE and CHEW, JJ.

### OPINION

LARSEN, Justice.

In this appeal from summary judgment in a legal malpractice case, Joseph and Gail Haussecker allege a fact question as to whether the Hausseckers' underlying silicosis claims were barred by statute of limitations before the Hausseckers sought advice from attorney Jerry Childs. Finding a fact question exists as to whether the discovery exception to limitations applied, we reverse and remand.

### FACTS

Joseph Haussecker was hired by AMF Tuboscope, Inc. in 1961. He worked there as a sandblaster until 1963 when he was transferred to Tuboscope's pipe pickling[1] operation after he complained of spitting up blood. He worked in the pickling operations until 1968 when he was advised by his physician not to return to that job.

Haussecker first noticed respiratory problems in September 1967. He sought medical treatment for his condition in November 1967, May 1968, and June 1968. In May 1968, Haussecker was coughing up blood and pus. At his employer's request, he saw one doctor who took x-rays, told him there was nothing wrong, and sent him back to work. He next consulted a lung specialist who performed a bronchoscopy on Haussecker's lung in June 1968 and diagnosed Haussecker as having a granuloma of the right lung. The doctor did not suggest any cause for his condition, but prescribed bed rest. His personal doctor, on the other hand, told him he had "Hodgson or lymphoma." In a deposition taken as part of the worker's compensa-

1. Pipe pickling involves extreme heating of used pipe, followed by dunking the hot pipe in an acid vat which loosened encrusted material so the pipe could then be cleaned by blasting.

tion suit in 1969 (where, we note, this testimony was an admission against interest), Mr. Haussecker testified:

Q: Now none of the doctors that you have been to, either Dr. Morales or Dr. McCullough, have told you what has caused this, have they?

A: No, they never did.

Q: Have they said that it was a work related disease or occupational hazard, have they said anything like that?

A: No, he didn't say anything like that.

Q: Did you ask them about that?

A: Yeah.

Q: Did they say that they didn't think it was caused by that?

A: Well, he didn't—Dr. Morales said that it didn't come from the job.

Q: What about Dr. McCullough, did he say the same thing?

A: He didn't really say, all he told me was that I had something in my chest here, he said it didn't come from sand blasting. So that's all I know from him.

Haussecker was bed-ridden from June 1968 to January 1969. In August 1968, he sent notice to his employer that his illness was a work-related disease and filed a worker's compensation claim. The claim described his health problems as:

Diseased Right Lung. Worked as Sandblaster continuously for 2 years. Occasionally worked as sandblaster for past 4½ years. Also worked around oven 800° burning pipe out, also open 1,000 gal. acid vat, regularly exposed to dust and smoke and various fumes.

He believed he had silicosis because during the six and a half years he worked for Tuboscope, eight co-workers had lung trouble, and one died of lung disease.

Haussecker's compensation claim was denied by the Industrial Accident Board, which found that "the evidence submitted fails to establish that the claimant suffered a compensable injury and/or occupational disease in the course of employment...." On November 6, 1968, Haussecker filed suit against the worker's compensation carrier, Liberty Mutual Insurance Company. In his suit, Haussecker alleged that the sandblasting and pipe pickling work he performed for AMF Tuboscope had "caused severe and permanent damage to [his] lungs and chest and the glands and soft tissues of the chest, neck, and face, and ha[d] caused [him] to have the disease of silicosis...." Haussecker was never able to obtain a diagnosis of silicosis to sustain his compensation claim. Two physicians consulted by Haussecker's attorney, then Jerry Childs, stated that they would not be able to assist in the case if it came to litigation, meaning they could not establish causation between his lung problems and exposure at his workplace. After three successive attorneys withdrew from his case, including Childs, Haussecker's worker's compensation case was dismissed for want of prosecution in 1972.

In response to questions about why he withdrew from Haussecker's compensation case, Childs testified:

Q: In fact, were you aware of any medical evidence at the time you were having the worker's compensation case that said that Mr. Haussecker had any kind of disease that was any way related to sandblasting or his employment at AFM [sic] Tuboscope?

A: No, sir.

Q: And for that reason, you could not in good faith continue to pursue a worker's compensation claim on his behalf, could you?

A: That's right.

Q: Part of our obligations as a lawyer is, if we get to a situation where there's simply—we don't have sufficient evidence—there's not evidence to support our client's claim, our obligation is to step forward and tell our client. Look, at this point in time there is no evidence, there is no medical evidence that you have this disease, and therefore I cannot continue to pursue your claim for you.

A: That's what we did.

After 1968, Haussecker did not return to his job at AMF Tuboscope, but instead accepted a light duty job with the City of

Midland Parks Department as zookeeper, which he held from 1969 until 1978. Haussecker's physical condition continued to deteriorate over the next twenty years. By July 1978, Haussecker's health had become so bad, he was forced to stop working. At this time, he applied for and received social security disability.

In May 1988, while in the hospital for a hand infection, Haussecker was examined by Dr. McKenna, a lung specialist. Dr. McKenna told Haussecker that, based on his symptoms and Dr. McKenna's experience with other AMF Tuboscope employees, he believed Haussecker had silicosis. Dr. McKenna performed a lung biopsy in February 1990 and sent it to a lab for testing. In April 1990, Dr. McKenna diagnosed Haussecker with silicosis.

Having finally secured a diagnosis of silicosis, the Hausseckers contacted Childs, recalling that he had represented them in the unsuccessful compensation case in 1969. On April 26, 1990, the Hausseckers met with Childs to see what action they could pursue. After reviewing their file and researching the law, Childs advised the Hausseckers that "too much time had run for him to be able to do anything about a claim that he had made 20 years ago." Discouraged, the Hausseckers took no further action for two years.

In August 1992, the Hausseckers contacted Mike Martin, a Houston attorney who had represented a number of clients in silicosis cases.[2] Martin met with the Hausseckers on August 12, 1992. Although he agreed to represent them in a products liability suit, Martin informed the Hausseckers they had a limitations problem, as more than two years had elapsed since Mr. Haussecker's silicosis diagnosis in April 1990. Indeed, the Haussecker's product liability suit was dismissed on summary judgment in March 1994 based on the two-year statute of limitations defense.

The Hausseckers then filed this legal malpractice action against Childs and his firm asserting claims for breach of fiduciary duty, negligence, gross negligence, and

DTPA violations. Childs moved for summary judgment contending that Haussecker's underlying silicosis claims were barred by the statute of limitations before the Hausseckers contacted Childs in 1990. The trial court granted the motion and rendered a take-nothing judgment. In a single point of error, the Hausseckers seek reversal.

## STANDARD OF REVIEW

In reviewing the trial court's grant of summary judgment, we are governed by the following well-established principles: (1) The movant for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) evidence favorable to the non-movant will be taken as true; and (3) reasonable inferences must be indulged in favor of the non-movant. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Vida v. El Paso Employees' Federal Credit Union*, 885 S.W.2d 177, 180 n. 1 (Tex.App.—El Paso 1994, no writ).

Where, as here, defendants are movants, our review is limited to whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of plaintiff's cause of action. *Vida*, 885 S.W.2d at 180 n. 1. For defendant-movants to prevail on summary judgment, they must either conclusively disprove at least one element of the plaintiff's theory of recovery, or plead and establish each essential element of an affirmative defense. *Lee v. Levi Strauss & Co.*, 897 S.W.2d 501, 503–04 (Tex.App.—El Paso 1995, no writ).

When defendants as movants rely on the affirmative defense of the running of limitations, they must conclusively establish when the cause or causes of action accrued and must negate every applicable exception to their limitations defense. Here, they must negate the discovery exception by proving as a matter of law that there is no genuine issue of fact about when Mr. Haussecker discover-

---

**2.** Martin had advertised locally as specializing in silicosis claims, which led to the Hausseckers

renewed pursuit of this action.

ed or, in the exercise of reasonable diligence, should have discovered the nature of his injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990).

### Legal Malpractice

An attorney malpractice action in Texas is based in negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex.1989). To recover on a claim of legal malpractice, a plaintiff must prove that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex.1995). A lawyer must adhere to that standard of care which would be exercised by a reasonably prudent attorney in the same position. *Cosgrove*, 774 S.W.2d at 664. If an attorney makes a decision which a reasonably prudent attorney could make in the same situation, that decision is not negligence even where it leads to a bad result. Subjective good faith of the attorney, however, is not a defense to an action for attorney malpractice. *Id.* Here, the trial court found that Childs and his firm committed no malpractice in advising the Hausseckers because their underlying claims were barred by limitations before they contacted him in 1990.[3] The Hausseckers contend, however, that the limitations period on their silicosis claims was tolled until they received the April 1990 diagnosis. Thus, if a fact question exists on the applicability of the discovery rule tolling limitations until Haussecker received his diagnosis of occupational disease, summary judgment was improper.

### The Discovery Rule in Latent Onset Disease Cases

Section 16.003 of the Texas Civil Practice and Remedies Code provides that "a person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues." Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a)(Vernon 1986 and Supp.1996). Negligence claims normally ac-

crue when the duty of ordinary care is breached, and strict liability claims generally accrue on the date of the injury. *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 753 (Tex.App.—Amarillo 1995, writ denied). There is, however, a "discovery" exception to the general rule of limitations. The discovery rule provides that the limitation period for a tort claim involving an injury of which the plaintiff could not, and did not, know at the time it occurred, does not begin to run until the injury done to the plaintiff is discovered, or until the plaintiff acquires knowledge of facts which, in the exercise of reasonable diligence, would lead to the discovery of the injury. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988); *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex. 1985). It is not necessary that a party know the details of the evidence by which to establish his cause of action. It is enough that he knows a cause of action exists in his favor. When a party learns of the existence of the cause of action, the party must utilize those means which the law provides for prosecuting or preserving the claim. *Hoover v. Gregory*, 835 S.W.2d 668, 671 (Tex.App.—Dallas 1992, writ denied). Thus, the discovery rule expressly mandates that the plaintiff exercise reasonable diligence to discover facts of negligence or omission. *Willis*, 760 S.W.2d at 644. The relevant inquiry therefore is not whether a plaintiff has actual knowledge of the particulars of a cause of action, rather, it is whether the plaintiff has knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights. *Arabian Shield Development Co. v. Hunt*, 808 S.W.2d 577, 583 (Tex. App.—Dallas 1991, writ denied); *Bell*, 899 S.W.2d at 754.

Application of the discovery rule standard is complicated in cases of latent onset diseases, such as silicosis, because the disease or symptoms may not begin to manifest until months or even years after exposure. Almost fifty years ago, the United States Su-

---

3. Childs' motion urges only this single ground for summary judgment. Thus, we do not address any other issues usually present in a legal malpractice case, such as the existence of the attorney-client relationship, the standard of care, or the reasonableness of the attorney's advice. Our opinion here is solely concerned with the correct formulation of the discovery exception to the two-year statute of limitations in latent onset disease cases.

preme Court considered this question in *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), a silicosis case. The court, analyzing the application of limitations under the Federal Employers' Liability and Boiler Inspection Acts in existence at the time, reasoned that in occupational disease cases, "no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves...." *Id.* at 170, 69 S.Ct. at 1025, 93 L.Ed. at 1293, *quoting Associated Indem. Corp. v. Industrial Accident Commission*, 124 Cal.App. 378, 381, 12 P.2d 1075. Holding otherwise, according to the court's reasoning, would attach harsh consequences to "blameless ignorance." *Urie*, 337 U.S. at 170, 69 S.Ct. at 1025, 93 L.Ed. at 1293.

Thus, it has long been held that a party cannot be charged with knowledge of a latent-onset occupational disease at least until the disease begins to manifest itself. A second complicating factor must be addressed here, as well. Some occupational diseases, including silicosis, are progressive. That is, the disease does not cause permanent disability at first, but progressively deteriorates the patient's health. Onset of the first symptoms may clearly indicate the start of permanent occupational disease if viewed in hindsight, but does not necessarily equate the same knowledge when viewed from the perspective of when symptoms began to appear. The progressive nature of occupational diseases thus suggests another important question: How long after symptoms first manifest can a party remain "blamelessly ignorant" of his or her affliction with a permanently disabling occupational disease as opposed to affliction with a mere temporary condition? In this case, the question is whether "blameless ignorance" may continue, despite the afflicted worker's own subjective belief that he has contracted an occupational disease, where his physicians will not diagnose that condition for many years despite repeated inquiries by the patient.

Texas courts apply the discovery rule in terms of when the plaintiff discovered or should have discovered the *nature* of the injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Weaver v. Witt*, 561 S.W.2d 792, 794 (Tex.1977); *Naugle v. Theard*, 917 S.W.2d 287, 291 (Tex.App.—El Paso 1995, writ denied); *Krueger v. Gol*, 787 S.W.2d 138, 140 (Tex.App.—Houston [14th Dist.] 1990, writ denied)[emphasis added]. Discovery of the "nature" of an injury resulting from a progressive occupational disease must include knowledge sufficient to determine whether the injury is a temporary sickness or a permanent condition, and should include some medical confirmation upon diligent inquiry. *See Casarez v. NME Hospitals, Inc.*, 883 S.W.2d 360, 366 (Tex.App.—El Paso 1994, writ dism'd by agr.). We do not believe that the discovery rule should be applied in a manner which would require one to file an action for undiagnosed sickness or discomfort or risk the loss of a right of action for permanent injury. The requisite knowledge for discovery rule purposes should be tied to a date the party, without benefit of hindsight, should reasonably have become aware of the permanent nature of a disease. This is not to say that a diagnosis is necessary in all cases to start limitations running. If, for example, a sandblaster were actually afflicted with silicosis, but delayed seeking diagnosis or treatment despite persistent symptoms, his or her inaction at some point would become unreasonable, rather than blameless, ignorance. *See id.; Sowell v. Dresser Industries, Inc.*, 866 S.W.2d 803, 806 (Tex.App.—Beaumont 1993, writ denied).

■ Our discovery rule analysis in an occupational disease case is therefore two-fold. First, when did the disease begin to manifest itself through recognizable symptoms? Second, when did those symptoms become such that a reasonable person, in the exercise of reasonable diligence, would have understood what disease is causing the symptoms, and that it is permanent? *See Srite v. Owens–Illinois, Inc.*, 870 S.W.2d 556, 564 (Tex. App.—Houston [1st Dist] 1993), *rev'd in part on other grounds*, 897 S.W.2d 765 (Tex.1995)(calculation of prejudgment interest). Implicit in the second prong of this inquiry is a requirement that once suspecting

the nature of an impairment, plaintiff must seek diagnosis with reasonable diligence. There are few Texas cases considering the reasonableness of an occupational disease plaintiff's delay in seeking a diagnosis or filing a lawsuit after the onset of symptoms. In *Sowell,* the Beaumont Court found as a matter of law that plaintiff failed to act diligently in discovering silicosis, based upon the ill man's unexplained refusal to submit to further tests after a doctor's diagnosis of possible silicosis or tuberculosis. *Sowell,* 866 S.W.2d at 806. The Texarkana Court, on the other hand, has found that the plaintiff's acknowledged symptoms and a diagnosis of asbestosis did not time bar the plaintiff's cause of action as a matter of law where the plaintiff denied being told of the diagnosis. *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 679 (Tex.App.—Texarkana 1991, writ granted; order withdrawn), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993).[4]

Undoubtedly, a firm diagnosis from a physician will start the limitations period running. We do not necessarily agree with Haussecker's premise, however, that nothing short of a positive diagnosis by a physician will have that effect. This formulation of the discovery rule ignores that requirement that a plaintiff show due diligence in seeking a diagnosis once symptoms have manifested. On the other hand, we do not find that mere onset of symptoms will necessarily end a party's "blameless ignorance" of a permanent occupational condition. Whether any given plaintiff acted reasonably and promptly in seeking a diagnosis of any health problem which is later confirmed medically as a permanent occupational disease is a function of the particular facts and circumstances of each case. The issue may prove to be a factual one, often involving credibility of the plaintiff's explanation for any delay best left to the jury.

### The Discovery Rule Applied in this Case

█ The Hausseckers allege that a fact question exists on whether their silicosis claim was time-barred in 1990, and the trial court therefore erred in granting summary judgment on the basis of limitations. We agree. Although the evidence before the court showed that Haussecker had experienced chronic lung ailments since 1967, that he filed a claim for workman's compensation alleging a work-related illness, and that he had retained counsel and filed suit specifically alleging the disease of silicosis, it also shows that he was never able to obtain a medical diagnosis of that disease in support of his compensation claim. Indeed, several doctors affirmatively told Haussecker that he had some condition other than silicosis, and that his problems were not work-related. It appears (at least for summary judgment purposes) that Haussecker diligently sought to ascertain the nature of his disease and link it to his work at AMF Tuboscope, but was not able to do so until years after his symptoms began.

That Haussecker suspected he had silicosis, and even that he filed a worker's compensation claim based upon that belief, is therefore not sufficient to conclusively defeat the discovery rule here. No matter how

---

**4.** We find further helpful guidance by example in the following occupational disease summary judgment cases from other jurisdictions having discovery rules similar to that used in Texas: *White v. Owens–Corning Fiberglas Corp., et. al.,* 447 Pa.Super. 5, 668 A.2d 136, 145 (1995)(initial shortness of breath, which could have been associated with any number of other maladies, did not constitute a discernable physical symptom of asbestos-related disease as a matter of law until plaintiff began to have difficulties walking more than a half a block, climbing a flight of stairs, and washing dishes); *Reasons v. Union Pacific Railroad Company,* 886 S.W.2d 104, 106 (Mo. App. E.D.1994)(plaintiff not unreasonable as a matter of law in delaying diagnosis and discovering permanent occupational asthma after onset of symptoms where plaintiff had a long history of allergies, bronchitis, and sinus problems; a fact issue existed regarding whether plaintiff reasonably believed exposure to dust at work merely aggravated existing conditions rather than caused additional permanent damage); *Layton v. Watts Corp.* 498 So.2d 23, 25–6 (La.App. 5 Cir.1986)(unsophisticated heavy smoker not unreasonable as a matter of law in relying on doctor's initial incorrect diagnosis of non-work-related emphysema and tuberculosis); *Copeland v. Armstrong Cork Co.,* 447 So.2d 922, 925 (Fla. App. 3 Dist.1984), *approved in part, quashed in part on other grounds,* 471 So.2d 533 (Fla.1985)(plaintiff's reliance on incorrect initial diagnosis of non-work-related pneumonia and emphysema was not unreasonable as a matter of law).

accurate his suspicion turned out to be in hindsight, he could not prevail on his claim without medical testimony confirming the nature and cause of his disease. The record here is clear that Haussecker, despite consultations, physical examinations, x-rays, and bronchoscopic tests, could not obtain a diagnosis substantiating his suspicions. This failure ultimately led to the dismissal of his case without recovery. We believe that Haussecker is entitled to have a fact finder determine when he had sufficient knowledge, or through the exercise of reasonable care and diligence should have had knowledge, that he had silicosis. A person cannot know with certainty that he or she has silicosis without a medical diagnosis; conversely, if that person suspects the disease, he or she may not reasonably delay seeking a diagnosis. *See Casarez,* 883 S.W.2d at 366; *Sowell,* 866 S.W.2d at 807–08. Here, the summary judgment evidence shows that although Haussecker suspected silicosis, and repeatedly sought diagnosis, he did not obtain one until 1990. Thus, we find that defendants have not shown conclusively the statute of limitations ran before the Hausseckers consulted Childs promptly after receiving that diagnosis. The trial court erred in granting summary judgment on that ground.

### *CONCLUSION*

The Hausseckers' sole point of error is sustained, the judgment of the trial court is reversed, and the case is remanded for further proceedings in accordance with this opinion.